Commonwealth, Appellant, *v.* McAleese.

Argued March 19, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*William H. Lamb,* Assistant District Attorney, with him *Norman J. Pine,* District Attorney, for Commonwealth, appellant.

*Samuel J. Halpren,* for appellee.

OPINION BY WRIGHT, P. J., April 16, 1969:

On March 12, 1968, Dale McAleese and Anthony P. Pitcherella were indicted by the Grand Jury of Chester County on Bills Nos. 112 and 115 January Term 1968, respectively, charging the establishment of a gambling place as proscribed by Section 605 of The Penal Code. Act of June 24, 1939, P. L. 872, 18 P.S. 4605. On May 29, 1968, the defendants filed a joint pretrial application for the suppression of all evidence acquired by police officers in a raid, February 8, 1968, at 627 Belmont Street in the City of Coatesville. The officers were in possession of a search warrant which named Mary L. Fields as occupant of the premises. After a hearing, June 3, 1968, the court below filed an opinion and order, July 22, 1968, suppressing all evidence seized or obtained after the premises had been entered. On August 15, 1968, appeals to the Superior Court were filed by the Commonwealth. On October 24, 1968, the court below filed a supplemental opinion "as to the extent" of the suppression order.[1]

The court below reasoned that the execution of the search warrant by the officers "was violative of the Fourth Amendment" because the premises had been entered forcibly without announcement of purpose. The precise circumstances of the entry therefore become critical to our decision. The factual situation appears in the following excerpt from the testimony of Thomas G. Frame, Chief of County Detectives: "Q. Proceed; you were just getting out of your car? A. We walked up the alley and in the yard at 627 Belmont, there was lights on in the kitchen. I walked on to the back porch. Detective Sharpe and Sergeant Bullock went

---

[1] The Commonwealth thereafter presented a petition for leave to take additional testimony, which petition the court below refused to consider. This matter is not properly before us and does not affect our decision.

to the side—it is a double house—they went to the side where there is an alleyway and stood under the kitchen window. I walked to the porch. The Venetian blinds were on a downward slant. I looked in the Venetian blind and I observed a card game in progress. I could see Mr. Julius Gordon with his back to me; the rest of the players I could not see their faces; I could only see to the shoulders. The next player I could see to the waist and then the one up at the end, I could just see his hands on the table. I observed one full hand of stud poker. The man furthest from me won that pot. There was approximately ten to twenty separate American bills, currency. I couldn't tell the denominations. The fellow pulled the pot in. I observed Mr. Gordon then lean back on his chair, take his money, which was in front of him, and start counting it. I observed four to five one hundred dollar bills he ripped off, and then I turned my attention to the game again. The man to my extreme right started to deal the cards. The telephone rang. At that time the defendant, which I did not know at that time, Mr. Pitcherella, walked over, answered the telephone. Q. Do you see him here today? A. He is sitting at the end of defense counsel table. He picked up the phone and there was a very short conversation, approximately five to six seconds. He said, 'Okay,' and hung up the phone; and immediately looked out the rear view—rear view door; held the blind up. I stood back up against the wall. Then put the blind down. I walked over and knocked on the door. He lifted the blind up and looked right at me. And I said, 'It's the police; open up'. Q. Will you say that again, now? You walked over to the door—A. I—yes, I walked back to the door. Q. Okay, and you knocked? A. I knocked on the door. He opened the blind and looked at me. Q. What did you say? A. I said, 'It's the police; open up'. He then

dropped the blind down and yelled, 'It's the cops'. I then observed the men jump up from the table. I then grabbed the door and tried to pull it open, and I kept yelling, 'Open up'. Q. How many times would you say you yelled that? A. Approximately three times, that I can remember. Q. Okay. A. At that time Patrolman Lamar, behind me, started to yell, 'Open up: it's the police'; I then put my foot through the storm door. At that time I hurt my ankle, so I stepped back and I ordered Patrolman—or asked Patrolman Lamar to finish kicking the door. He kicked. it about four times and then the defendant came over and said, 'Okay, I'll open it'. And he came over and opened the door. By the Court: Q. Which defendant? A. Pitcherella . . . Q. Now, to back up just a minute, Detective Frame, you said that Detective Sharpe read the search warrant to Mary Fields, is that right? A. Yes, sir. Q. And then you said you told her to go upstairs and get dressed, did you? A. Yes, sir . . . Q. And then you say McAleese said what—what did he say to you again? A. He said, 'She has nothing to do with this; this is my game; I rent this house'. Q. And then you said Mr. Pitcherella said—The Court: Mr. Pitcherella said, 'Yes, he rents it from me; I own it'. Right? The Witness: Yes, sir."

The principal authority cited by the court below is *Commonwealth v. Newman*, 429 Pa. 441, 240 A. 2d 795, and that same case is relied upon by both sides in the present appeal. Mr. Justice O'Brien therein pronounced what must be accepted as the controlling rule governing the execution of search warrants in this Commonwealth, as follows (italics supplied) : "An announcement of both authority and purpose is required before a door can be broken down, *absent exigent circumstances*". The Commonwealth does not contend in the instant case that there was an announcement of

purpose, but argues that such an announcement was unnecessary because of exigent circumstances. We are in accord with the Commonwealth's position.

The opinion in the *Newman* case recognizes, as justification for noncompliance with the announcement requirement, circumstances indicating "that the person to be arrested is fleeing or attempting to destroy evidence", or "where the police have valid grounds for being virtually certain that petitioner already knows their purpose". The record before us discloses the existence of both circumstances. The officers arrived at the premises armed with a valid search warrant.[2] Standing on the porch, and looking through a window in the door, Detective Frame observed gambling taking place within. A card game was in progress which involved considerable money. The officer then knocked on the door. Pitcherella looked out directly at the officer, who said: "It's the police; open up". Pitcherella exclaimed: "It's the cops". The resultant flurry of activity clearly indicated that the occupants of the room were aware of the officers' purpose. Moreover, the officers were justified in believing that an immediate attempt would be made to destroy the evidence. Either of these circumstances was sufficient to establish the exigency contemplated under the rule of the *Newman* case.

The provisions of the Fourth Amendment to the Constitution of the United States are designed to protect our citizens against unreasonable searches and seizures. These provisions should not be extended beyond normal credulity to tighten the straightjacket under which police officers are presently being com-

---

[2] At the conclusion of the hearing, the learned judge below said: "I will tell you now, there is no question in my mind that this warrant was issued with probable cause. I think the warrant was valid".

pelled to operate in their efforts to enforce the law. We are convinced on this record that the search warrant was not executed in an unreasonable manner. The occupants of the premises were alerted to the presence of the officers, were aware of their purpose, and immediate entry was necessary in order to prevent destruction of evidence.

Order reversed with a procedendo.

HOFFMAN and SPAULDING, JJ., concur in the result.