Commonwealth *v.* Dial, Appellant.

Argued September 28, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Daniel M. Berger,* with him *Berger & Kapetan,* for appellant.

*Robert L. Campbell,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert L. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, December 20, 1971:

Appellant, Charles Dial, was indicted on three separate bills charging: unlawful possession of drugs on June 28, 1968 (No. 173), unlawful possession of drugs and malicious loitering and prowling on July 11, 1968 (No. 235), and unlawful possession of drugs on August 2, 1968 (No. 303).

Following a nonjury trial, appellant was found guilty on all counts, save for the loitering and prowling count contained in Bill No. 235. Motions for a new trial and in arrest of judgment were denied, and appellant was sentenced to concurrent five-to-twenty-year prison terms on Nos. 173 and 303. Sentence on No. 235 was suspended. The Superior Court reversed the judgment of sentence at No. 303, and affirmed the other two. Judge HOFFMAN filed a concurring and dissenting opinion to the effect that he would also reverse the judgment of sentence at No. 235. We then granted allocatur.

## BILL No. 173

With respect to No. 173, police, armed with a search warrant, searched appellant's apartment and seized a quantity of narcotic drugs. The affidavit in support of the issuance of the search warrant was made by a police officer in the following language: "Information received this date that subject Charles Dial of 2007 Webster Ave. is selling cocaine and heroin on Centre Ave, at Arthur Sts. and that he is packaging same in his residence. Subject Charles Dial is known to the narcotic squad as a dealer in narcotics having been arrested by Federal Agents three weeks ago for sale of heroin. Informant has supplied information in the past leading to the arrest of Meryl Bedford and Mary Hughes at 226 Dinwiddie St. and a large seizure of heroin and cocaine also the arrest of Robert Monroe at 2040 Forbes St. and a large seizure of marihuana. Affiant observed this subject on this date transacting business with known drug addicts on Centre Ave. in vicinity of Arthur St. in company with members of narcotic squad, after this survelliance [sic] this warrant was obtained."

Appellant argues that this affidavit did not set forth underlying circumstances sufficient to permit the magistrate to issue the search warrant. Appellant emphasizes that the phrase "transacting business" does not necessarily mean that appellant was dealing in narcotics. However, the affiant testified that the expression "transacting business" meant "dealing in dope," and a common sense reading of the affidavit supports this testimony. Consequently, there can be no doubt that this affidavit easily satisfied the requirements of *Spinelli v. United States,* 393 U.S. 410, 89 S. Ct. 584 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509 (1964).

Appellant also argues that in executing the warrant at No. 173, the failure of the officers to give appellant reasonable opportunity to admit them before the officers broke down the door invalidated the search. However, in *Commonwealth v. Newman,* 429 Pa. 441, 444, 240 A. 2d 795, 797 (1968), we recognized that the procedure set forth in 18 USC §3109 was "reasonable" in terms of the Constitution's protection against "unreasonable" searches. This statute states: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance. . . ."

In the instant case, the police testified that they announced their presence, announced that they had a warrant, and requested that someone "please, open-up" the door. Thus, unlike the situation in *Newman,* the police did announce their identity, authority and purpose. Then, according to police testimony, they heard the sound of running from inside the apartment. This factor, the sound of running, distinguishes this case from *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A. 2d 159 (1971), where we held that a five to fifteen sec-

ond delay, alone, cannot constitute support for a belief that evidence was being destroyed. We agree with the opinion of the Superior Court that "When they heard sounds of running and the door was not opened, they were warranted in thinking that they were refused admittance and that an effort was underway to destroy evidence. They did not need to wait until the evidence was destroyed." *McClure v. United States*, 332 F. 2d 19 (9th Cir. 1964), cert. denied, 380 U.S. 945 (1965); *Masiello v. United States*, 317 F. 2d 121 (D.C. Cir. 1963), *Commonwealth v. Dial*, 218 Pa. Superior Ct. 248, 276 A. 2d 314 (1971).

## BILL No. 235

The conviction on Bill No. 235 involves a warrantless search incident to arrest. In the early morning hours of July 11, 1968, appellant and a female companion were arrested on a charge of loitering and prowling. Appellant was immediately searched, and some narcotics were found on his person. Although appellant was eventually acquitted on the loitering charge, the narcotics found in the search incident to the loitering arrest formed the basis of his narcotics conviction on Bill No. 235.

Appellant argues that the statute under which he was arrested, §418 of The Penal Code, is constitutionally void for vagueness. We need not reach that issue, for whatever §418 can be construed to mean, the police could not possibly have had probable cause to arrest appellant under its terms.

Section 418, 18 P.S. §4418, provides as follows: "Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor. . . ."

The facts, as stated in Judge HOFFMAN'S dissenting opinion in the Superior Court, were as follows:

The arrest took place on the sidewalk of Centre Avenue at the intersection of Roberts Street. For about two hours before the arrest, the police had observed appellant and a woman companion in various locations in the area. Upon seeing them for the fifth time, the police ordered them to go home. Instead, the couple went into an open all-night market, about thirty yards from the intersection. When the police returned, appellant and his companion were standing on the corner near the market and the woman was holding a package purchased there. When again requested to leave, the couple told the officers that they were "watching for a jitney." The officers told the couple that the jitney stand was across the street. At this point the couple told the police to "leave them alone." It was then that they were placed under arrest.

By the terms of the statute, the offense of "malicious loitering" only applies to dwelling houses. Moreover, by its own terms, if malicious loitering is directed against any specific type of conduct, it is directed against loitering which is somehow "malicious."

"Malicious," as used in this statute, has been defined to mean "[having] as its purpose injury to the privacy, person or property of another." *Commonwealth v. DeWan*, 181 Pa. Superior Ct. 203, at 208, 124 A. 2d 139, 141 (1956).

The police had absolutely no evidence that appellant and his companion, when they were arrested at the corner of Centre Avenue and Roberts Street, had any such purpose in mind. Consequently, the arrest was invalid and the evidence seized incident to such an arrest must be suppressed.

Judgment of sentence on Bill No. 173 affirmed. Judgment of sentence on Bill No. 235 reversed.

Mr. Justice Jones concurs in the result.

Mr. Chief Justice Bell and Mr. Justice Barbieri took no part in the consideration or decision of this case.