## Commonwealth *v.* Clemson, Appellant.

Argued September 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Robert F. Kelly,* for appellant.

*Carolyn Engel Temin,* Assistant District Attorney, with her *Mark Sendrow* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., April 22, 1975:

Appellant contends that evidence seized by the police pursuant to a legally sufficient search warrant should have been suppressed because the warrant was improperly executed.

On August 20, 1972, the Security Administrator of the Franklin Institute discovered that four antique rifles were missing from a display case. The rifles ranged in age from 120 to 150 years. On September 8, 1972, detectives from the District Attorney's office went to the apartment of John Clemson, the appellant. Prior to approaching Clemson's apartment, the detectives informed the manager of the apartment complex in which appellant lived of their identity and purpose. He gave them a key to the apartment. One of the detectives knocked on the apartment door and announced "Police, we have a search warrant." The detective knocked a second time and again announced his identity and purpose. Following the second knock, the detectives waited ten seconds, and then used the passkey to gain entrance to the apartment. Upon entering, the police observed appellant's wife emerging from one of the bedrooms and appellant's daughter asleep on the living-room couch. The police identified themselves to Mrs. Clemson, showed her the warrant, and proceeded to search the apartment. The detectives discovered four antique rifles wrapped in a gray blanket under the appellant's bed. A jury found appellant guilty of receiving stolen goods.

It is well-established that police officers are required to give notice of their identity and purpose before attempting to enter private premises. *Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795 (1968).[1] The fact

---

1. The announcement requirement is waived if exigent circumstances are present. Noncompliance may be justified if the occupant is fleeing or attempting to destroy evidence, or if the police are virtually certain that the occupant is already aware of their purpose. See, *Ker v. California*, 374 U.S. 23 (1963); *Miller*

that the police were in possession of a passkey and did not have to resort to physical force in order to gain entry does not make their intrusion any less "forcible." In *Sabbath v. United States*, 391 U.S. 585 (1968), the Supreme Court held that the use of "force" is not an indispensable element of the federal announcement statute.[2] The Pennsylvania Supreme Court has stated that "the constitutional standards appear to be those embodied in 18 U.S.C. §3109." *Commonwealth v. Newman*, supra at 444. This Court has held that the announcement requirement remains even though the appellant's door is unlocked with a passkey. *Commonwealth v. McCloskey*, 217 Pa. Superior Ct. 432, 272 A.2d 271 (1970). The announcement doctrine is designed to protect the privacy afforded by the Fourth Amendment; an intrusion is no less an intrusion "whether officers break down a door, force open a chain lock on a partially open door, open a locked door by use of a passkey, or . . . open a closed but unlocked door." *Sabbath v. United States*, supra, at 590. Thus, "[a]n unauthorized entry by means of a passkey is equivalent to a forcible entry." *Commonwealth v. Cerulla*, 223 Pa. Superior Ct. 24, 27, n.5, 296 A.2d 858 (1972).

There is a second well-established rule in regard to the propriety of forcible entry on the part of the police. Even where the police duly announce their identity and purpose, as the detectives did in the present case, forcible

v. United States, 357 U.S. 301 (1958); *Commonwealth v. De-Michel*, 442 Pa. 553, 277 A. 2d 159 (1971); *Commonwealth v. Newman*, supra. The mere fact that the evidence being sought is easily destroyed, however, does not suspend the requirement. There must be some affirmative indication to support a belief that evidence is being destroyed. See, *Commonwealth v. Dial*, 445 Pa. 251, 285 A. 2d 125 (1971).

2. 18 U.S.C. §3109 reads in relevant part: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance. . . ."

entry is "still unreasonable and hence violative of the Fourth Amendment if the occupants of the premises . . . are not first given an opportunity to surrender the premises voluntarily." *Commonwealth v. DeMichel,* supra, at 561, 277 A.2d at 163. See also, *United States ex rel. Ametrane v. Gable,* 276 F. Supp. 555 (E.D. Pa. 1967). The issue presented in this case is reduced, therefore, to whether the ten-second delay afforded the occupants of appellant's residence a sufficient opportunity to surrender the premises voluntarily.[3]

In the absence of exigent circumstances, a ten-second delay prior to entry provides an insufficient opportunity for the occupants to voluntarily surrender the premises. Our Supreme Court has observed that "a mere twenty second delay in answering the door cannot constitute support for a belief that evidence was being destroyed (*or in terms of 18 U.S.C. §3109, a refusal of admittance*). Commonwealth v. Newman,* supra, at 448. (Emphasis added). *Commonwealth v. DeMichel,* supra, involved a factual pattern very similar to the situation presented by the instant case. There the police began to break down the front door of appellant's house five to fifteen seconds after announcing their presence and purpose. The police had observed appellant's wife peering through a window

---

3. There are no exigent circumstances in the present case. In his opinion, the trial judge states that there was no justification to believe that evidence was being destroyed. The lower court does state that because the police were looking for rifles, they could have concluded that their lives were endangered and thus were justified in entering the apartment. Appellant charges that this reasoning is "somewhat curious" in light of the fact that the rifles being sought were antiques. The Commonwealth's brief responds: "Be that as it may, it is not necesary in order to uphold the order of the Court below . . . to find that 'exigent circumstances' existed. Instead, it is the Commonwealth's position that in the instant case, the delay by the police of ten seconds before they used the key to open the door was completely reasonable and, under the circumstances totally in compliance with the requirements of the Fourth Amendment."

in close proximity to the front door. The wife claimed that the delay was occasioned by her having to get dressed. The Court stated: "Regardless of the truth of her testimony, it serves to illustrate that a five to fifteen second delay was insufficient for the police to have formed a reasonable belief that the occupants of appellant's house did not intend to permit peaceable entry." 442 Pa. at 562, 277 A.2d at 164. In the present case, the detectives did not see anyone in the apartment and heard no sounds emanating from inside. Thus, they were unable to formulate a belief as to whether the apartment was occupied at all. Under these circumstances, a ten second delay is not reasonable. As was noted in *DeMichel,* an occupant can have "countless legitimate reasons" for not answering the door within a five to fifteen second period. In this case, the appellant's daughter was asleep on the couch and appellant's wife was emerging from the bedroom at the time the detectives entered the apartment. There was no reason for the police to believe that the occupants would have refused their admittance.

The judgment of sentence is vacated and the case remanded for a new trial.

---

DISSENTING OPINION BY PRICE, J.:

I believe the procedures followed by the police were correct under the existing case law and under the Fourth Amendment, and I must, therefore, dissent. There must be a proper balancing of the right of our citizens to be free from unreasonable searches and seizures, and the maintenance of an effective police force. I do not believe the majority maintains such a balance in this case.

I do not base my dissent on the existence of exigent circumstances which would permit a deviation from the usual requirements for the search of a dwelling.[1] I simply

---

1. *See Commonwealth v. Dial,* 445 Pa. 251, 285 A.2d 125 (1971); *Commonwealth v. Johnson,* 223 Pa. Superior Ct. 83, 289

contend that the requirements of *Commonwealth v. De-Michel*, 442 Pa. 553, 277 A.2d 159 (1971), were fully complied with in the present case. See also Judge VAN DER VOORT'S dissenting opinion in *Commonwealth v. Easton*, 231 Pa. Superior Ct. 398, 332 A.2d 448 (1975), in which President Judge WATKINS and I joined.

The facts indicate that the police officers arrived at appellant's apartment complex at approximately 11:00 a.m. with a warrant authorizing a search of the apartment. After the officers talked to the manager, who gave them a key to appellant's apartment, they proceeded to the apartment, knocked on the door and announced their identity and purpose. When there was no response, they repeated the procedure. Following the second knock and announce, they waited 10 seconds and then entered by use of the key. They observed appellant's daughter asleep on the living room couch and his wife emerging from one of the bedrooms. The police identified themselves, showed appellant's wife the search warrant, and then searched the apartment. They found the four stolen flint lock rifles wrapped in a blanket under appellant's bed.

I believe there are several factors in the present case which indicate the actions of the officers were totally reasonable and correct. The police knocked on the door and announced their identity and purpose twice. Although the record fails to reveal how much time passed between the first knock and the second knock, the police waited 10 seconds after the second knock before entering the apartment. In addition, we are considering the propriety of entry into a four room apartment at 11:00 a.m., not entry into a multi-story house late at night. Even if the occupants had been in that part of the apartment farthest removed from the door, they still had ample time to respond to the police. I cannot believe our Supreme Court

A.2d 733 (1972); *Commonwealth v. Fisher*, 223 Pa. Superior Ct. 107, 296 A.2d 848 (1972); *Commonwealth v. McAleese*, 214 Pa. Superior Ct. 228, 252 A.2d 380 (1969).

intended a hard and fast rule as to how much time must pass, after proper knock and announce, before the police may enter. Each case should be decided on its own merits.

I believe the police acted properly and would affirm the judgment of sentence of the lower court.

WATKINS, P.J., and VAN DER VOORT, J., join in this dissenting opinion.