480 A.2d 1035

**COMMONWEALTH of Pennsylvania**

**v.**

**James Clarence DAVIS, a/k/a Dickey, Appellant.**

Superior Court of Pennsylvania.

Submitted March 24, 1983.

Filed June 22, 1984.

Petition for Allowance of Appeal Denied Oct. 29, 1984.

Susan C. DeYoung, Assistant Public Defender, Harrisburg, for appellant.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before CERCONE, President Judge, and CIRILLO and HOFFMAN, JJ.

CERCONE, President Judge:

Appellant was arrested, charged, and convicted of possession of a controlled substance with intent to manufacture or deliver. Post-trial motions were filed and subsequently denied.[1] Appellant was sentenced to a term of incarceration of three (3) to six (6) years. He then filed this appeal raising four issues, which actually represent nine claims.

The first contention raised is that the suppression court erred in not suppressing the fruits of a search conducted pursuant to a search warrant. Appellant argues that the affidavit of probable cause was inadequate to justify a search and that the premises to be searched were not described with "sufficient precision." Additionally, appellant complains that the police in executing the warrant violated the "knock and announce" rule. We find that the affidavit of probable cause was adequate and sufficiently precise to justify the search of appellant's residence and that the execution of the warrant was proper in the circumstances of this case.

The affidavit of probable cause read as follows:

Received information from an informant who has given truthful information concerning drugs to the affiant in the past. This informant was sent to said address after being searched by Hbg. Police Officers, observed going to and from said address where a $100 purchase of heroin was made. Said informant also observed more drugs on the premises. Informant was observed leaving the premises and again searched by Hbg. Police Officers. James Davis has been arrested on previous drug charges on 7–18–72 N.Y. City possession of dangerous drugs, 10–23–75 Pa. possession of heroin, 12–6–75 N.Y. possession of controlled substance, 12–8–78 N.Y. drug paraphanalia, [sic] 7–14–79, Hbg. Pa. heroin. The affiant on several

---

1. While privately retained trial counsel timely filed post-trial motions, they were denied for failure to file a brief in support thereof. Subsequently, the Public Defender's Office petitioned the trial court for leave to file *nunc pro tunc* supplemental post-trial motions and a supporting brief. The court granted leave and subsequently denied the supplemental motions.

routine surveillance observed persons addicted to controlled substances entering and leaving said residence. Below is a list of the serial numbers of the monies used to make said purchase.

In particular appellant complains that while the police alleged that a controlled buy had occurred at the described premises, they did not allege that it had been made from appellant. Additionally, he argues that the trustworthiness of the informant was not established and the allegations of the most recent previous drug involvement were three months old and had not resulted in a conviction. Finally, he contends that there was no indication of when the affiant had observed the coming and going of addicts from appellant's residence.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court adopted a "totality of the circumstances" approach in evaluating affidavits of probable cause used to support the issuance of search warrants. This court has followed the Supreme Court's lead. *See Commonwealth v. Price,* 318 Pa.Superior Ct. 240, 464 A.2d 1320 (1983); *Commonwealth v. Sorrell,* 319 Pa.Superior Ct. 103, 465 A.2d 1250 (1983). Applying the "totality of circumstances" approach to the affidavit at hand, we find that the affidavit did not rely upon the unproven credibility of the undisclosed informant and that it did establish probable cause for the issuance of the search warrant.

The issuing authority was advised by the affiant of the controlled buy, of appellant's arrest record, and of the observation of known drug addicts visiting appellant's apartment. Each such factor is a proper consideration in assessing an application for a search warrant. *See Commonwealth v. Gullett,* 459 Pa. 431, 329 A.2d 513 (1974) (probable cause established in part by prior related arrests); *Commonwealth v. Monte,* 459 Pa. 495, 329 A.2d 836 (1974) (may consider prior arrests and association with known violators); *Commonwealth v. Norwood,* 456 Pa. 330, 319 A.2d 908 (1974) (may consider encounters with individuals

previously known as result of drug violations); *Commonwealth v. Ensminger,* 325 Pa.Superior Ct. 376, 473 A.2d 116 (1984) (controlled buy by informant); *Commonwealth v. Bable,* 286 Pa.Superior Ct. 203, 428 A.2d 643 (1981) (police may consider prior criminal record). It is the combination of these various considerations which distinguish this case from others like *Commonwealth v. Tolbert,* 492 Pa. 576, 424 A.2d 1342 (1981); *Commonwealth v. Demchak,* 251 Pa.Superior Ct. 253, 380 A.2d 473 (1977); and *Commonwealth v. Davis,* 225 Pa. Superior Ct. 242, 310 A.2d 334 (1973).

In *Tolbert,* the Commonwealth relied upon a stale observation by an informant and recent observations of conduct equally consistent with drug trafficking or innocent activity. Probable cause was found not to exist because the informant's first hand observation was not current and could not make innocent conduct suspect. Here we have a recent controlled purchase as well as visits by *known* drug users; the police here did not rely heavily upon the initial tip to support the warrant. In *Demchak* probable cause was not present, as while the police were aware of the defendant's prior arrest, his subsequent suspicious conduct was too dissimilar to the prior conduct to justify an intrusion into his privacy. Here the informant's purchase of heroin was consistent with appellant's background.

Probably most similar to appellant's situation, yet clearly distinguishable, is *Davis, supra.* There the basis for the search warrant were observations of reputed narcotic dealers coming and going from the defendant's residence. The defendant himself had a reputation as a drug pusher and had recently been arrested on such charges. Questionable activity was observed near his house. Such information did not afford a reasonable inference of criminal conduct. However, in appellant's situation we have the additional fact of a recent controlled buy.

Nor do we find merit to appellant's objections that the affiant's failure to indicate when he observed the known drug users coming and going and the staleness of appel-

lant's prior arrests, prevented the issuing authority from finding probable cause present. For as we held in *Commonwealth v. Ryan*, 300 Pa.Superior Ct. 156, 170, 446 A.2d 277, 284 (1982); "Properly recited facts indicating activity of a protracted and continuous nature make the passage of time less significant. *Commonwealth v. Stamps*, 493 Pa. 530, 427 A.2d 141 (1981)." Prior conduct of a party can not alone support the issuance of a search warrant, however, such fact can be considered *along with other available information* so long as the prior conduct bears a sufficient similarity to the acts in question. *Commonwealth v. Gullett*, 459 Pa. 431, 329 A.2d 513 (1974); *Commonwealth v. Bable*, 286 Pa.Superior Ct. 203, 428 A.2d 643 (1981).

 In the case at hand the issuing authority could quite properly look at the alleged controlled purchase in light of appellant's prior arrests and the surveillance at an unknown time and find that it was probable that illicit drugs had been over a period of time and were currently being dispensed from appellant's residence. It is only the probability of criminal conduct, and not a *prima facie* case, of criminal activity that need be demonstrated. *Commonwealth v. Mazzochetti*, 299 Pa.Superior Ct. 447, 445 A.2d 1214 (1982). Here we find that the affidavit did set forth the probability that narcotics were being distributed from appellant's residence.[2]

In regards to the description of the premises, appellant submits that the row house had been converted into two units and had the police checked with his landlord they would have discovered such. In fact he contends the police should have been aware of this from their own informant's visit to the premises. The trial court accepted the police officer's testimony to the effect that from the outside there

2. Appellant's claim, that the affidavit did not establish that he was selling drugs is irrelevant. Probable cause is demonstrated if the facts related in the affidavit reasonably show that the items sought are connected to criminal activity and that they will be found in the place to be searched. *Ryan, supra.* Who is responsible for the presence of the contraband or evidence is not pertinent to issuing a search warrant.

appeared to be only one residence and that according to their information, appellant and his girlfriend were the only occupants. The landlord testified that appellant rented the whole house.

■ In *Commonwealth v. Andujar*, 264 Pa.Superior Ct. 326, 399 A.2d 1074 (1979) this court held that where a row house had been converted into two units, but the description in the warrant evidenced only one unit, such description was sufficiently specific where diligent efforts of the police had not disclosed the existence of the internal subdivision. Similarly in *Commonwealth v. Chamberlain*, 277 Pa.Superior Ct. 503, 419 A.2d 1261 (1980) we stated that if there is cause to believe the premises covered by the warrant are being used as a single unit, the warrant directing the search of more than one unit is permitted. In the absence of evidence as to any exterior features which would have indicated the presence of more than one unit, a warrant will not be invalidated because it authorizes a search of an entire house, although the house consists of two units. *Commonwealth v. Yucknevage*, 257 Pa.Superior Ct. 19, 390 A.2d 225 (1978).

■ The current case clearly falls within the scope of the above cases and therefore we find that the search warrant did adequately describe the premises. As the police testified they were under the impression, which was correct, that appellant and his girlfriend were the sole occupants of the structure. Visual observations of the exterior of the building did not raise a question as to the unitary occupancy. Therefore we can not find a fatal flaw in the description of the premises.

■ Appellant's final challenge to the search is that in executing the warrant the police violated the "knock and announce" rule. When police officers approached the rear of the row house, they observed a black man, other than appellant, who, upon seeing the officers, fled into the row house. The police officers approached the rear door, knocked, and yelled "police". When they received no re-

sponse within ten seconds, or so they forcibly entered the rear of the building. Another contingency of officers, after being advised by radio of the rear entry, then entered, unannounced through the front door. Once inside, the police encountered a locked door leading to the second floor. They knocked on the locked door, yelled "police" and were requested to wait a minute. They waited several minutes, heard scampering upstairs and pried the door open and ascended the stairs to the second floor. Appellant would have us hold that since there was no announcement of purpose and only a very brief delay before force was used, the initial entry was improper.[3] Similarly, he contends that the entry to the second floor was improper because the police failed to announce their purpose and no exigent circumstances were present to justify the forced entry. We are not persuaded.

Our Supreme Court addressed the "knock and announce" rule in *Commonwealth v. Norris,* 498 Pa. 308, 313–14, 446 A.2d 246 (1982) and there held:

We are satisfied in this case that the officers' partial noncompliance with the "knock and announce" requirement was justified by the presence of exigent circumstances. We recognize that only a limited number of circumstances can be considered to excuse compliance with this Fourth Amendment protection. *Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *United States v. Wylie,* 462 F.2d 1178, 1186 n. 53 (D.C.Cir.1972); *Commonwealth v. Beard,* 282 Pa.Super. 583, 423 A.2d 398 (1980). These are (1) "when the officers may in good faith believe that they or someone within are in peril of bodily harm." *Miller v. United States,* 357 U.S. 301, 309, 78 S.Ct. 1190, 1196, 2 L.Ed.2d 1332 (1958); (2) when the officers have a basis for assuming that a suspect is "armed or might resist arrest." *Sabbath v. United States,* 391 U.S. at 585, 88 S.Ct. at

---

**3.** We believe the entry through the front door, shortly after the rear entry, and shortly after those officers at the front were advised by radio to proceed in, should be considered as part of the initial entry through the rear door.

1759; (3) when there is "some affirmative indication to support a belief that evidence is being destroyed." *Commonwealth v. Clemson*, 234 Pa.Super.Ct. 191, 194 n. 1, 338 A.2d 649, 650 N. 1 (1975); *Miller v. United States; Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795 (1968); (4) when there are similar indications that "the person to be arrested is fleeing." *Miller v. United States*, 357 U.S. at 309, 78 S.Ct. at 1196; *Commonwealth v. Newman;* or (5) when "the facts known to officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture." *Miller v. United States*, at 310, 78 S.Ct. at 1196; *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Commonwealth v. Newman; Commonwealth v. Fisher*, 223 Pa. Super.Ct. 107, 296 A.2d 848 (1972).

(Footnote omitted.)

 The initial entry here was justified when the police encountered the third party who ran into the row house, locking the door behind him, and failing to respond to the announcement of the police. It has long been the rule in this Commonwealth that where the police are reasonably certain that the occupants are aware of their presence and purpose, the police need not knock and announce to give the occupant's a reasonable opportunity to surrender the premises. *Commonwealth v. Yucknevage, supra, Commonwealth v. Early*, 236 Pa. Superior Ct. 60, 345 A.2d 197 (1975); *Commonwealth v. Clemson*, 234 Pa.Superior Ct. 191, 338 A.2d 649 (1975). Where an occupant sees the police and immediately retreats back into the premises, as is the case here, the duty of the police to knock, announce, and wait is obviated.[4] Compare, *Commonwealth v. Williams*, 316 Pa.Superior Ct. 100, 462 A.2d 813 (1983).

**4.** While the third party was not a resident of the row house, his actions indicated he had some degree of access to the premises and his conduct was clearly intended to inhibit the police from carrying out their lawful duty. Thus exigent circumstances clearly existed.

■ We also find no impropriety in the entrance to the second floor. The police knocked and announced their identity, though not their purpose, appellant requested they wait a minute. While waiting to be admitted,[5] the police heard shuffling over head, but no indications that they were going to be admitted. Since the focus of the search warrant was narcotics, which could readily be destroyed, the police officers were justified in breaking in as it appeared appellant was stalling for time to destroy the drugs. *Commonwealth v. Pugh*, 223 Pa.Superior Ct. 112, 296 A.2d 864 (1972). Such a holding is especially appropriate here where the other individual, who first observed the approach of the police, had time to warn the upstairs occupants.

■ Appellant next contends that trial counsel was ineffective in failing to move for dismissal of the information which had been approved with a rubber stamp facsimile of the district attorney's signature; failing to object to testimony given by police officers that went beyond their qualifications; failing to object to testimony concerning guns found on the searched premises; and failing to object to the court's charge. In reviewing a claim of ineffectiveness a two step analysis must be employed:

It is well settled that "[w]hen confronted with a claim of ineffectiveness assistance of counsel, we must first ascertain whether the issue underlying the charge of ineffectiveness is of arguable merit, and if so, it must be determined whether the course chosen by counsel had some reasonable basis to effectuate his client's interest." *Commonwealth v. Pittman*, 295 Pa.Super. 234, [237], 441 A.2d 436, 437 (1982) (citations omitted). *See also Commonwealth v. McKnight*, [307] Pa.Super. [213], 453 A.2d 1 (1982); *Commonwealth v. Bossick*, [305] Pa.Super. [196], 451 A.2d 489 (1982).

**5.** Appellant contends that the police waited merely 30 seconds, while the Commonwealth contends the officers waited several minutes. In light of the various circumstances of this case we believe even the lesser amount of time was adequate.

*Commonwealth v. Lewis,* 314 Pa.Superior Ct. 298, 303, 460 A.2d 1149, 1151 (1983). In reviewing claims of ineffectiveness we must also keep in mind that there is a presumption that counsel is effective and it is a defendant's burden to demonstrate otherwise. *Commonwealth v. Miller,* 494 Pa. 229, 431 A.2d 233 (1981); *Commonwealth v. Adams,* 296 Pa.Superior Ct. 24, 442 A.2d 277 (1982). We find that appellant has failed to carry his burden of proof.

■ Appellant relies upon *Commonwealth v. Emanuel,* 285 Pa.Superior Ct. 594, 428 A.2d 204 (1981), to support his claim that a rubber stamp signature does not comply with the signature requirement of Rule 225(b), Pennsylvania Rules of Criminal Procedure. However, the Supreme Court has overruled this court's decision in *Emanuel. Commonwealth v. Emanuel,* 501 Pa. 581, 462 A.2d 653 (1983), finding that a rubber stamp facsimile does satisfy Rule 225(b). Accordingly appellant's first claim of ineffectiveness is without merit.

■ In his second claim appellant argues that while two detectives were qualified as experts in "drug paraphernalia," they went beyond the scope of their qualifications in testifying concerning field tests done on drugs and normal drug usage. He claims counsel was ineffective in not objecting to such testimony.

■ Both of the detectives complained of, testified as to their experience and training in the field of narcotic investigations and prosecutions. Both were explicitly qualified as experts in drug paraphernalia. Reviewing the *voir dire* of the qualifications of both witnesses, we have little difficulty in concluding that the witnesses could have also been qualified as experts in normal drug use practices and on the scene testing. *See Commonwealth v. Waters,* 276 Pa.Superior Ct. 584, 419 A.2d 612 (1980). Therefore, had counsel protested, he would not have been successful. Counsel will not be held to have been ineffective in failing to pursue a meritless issue. *Commonwealth v. Green,* 315 Pa.Superior Ct. 564, 462 A.2d 736 (1983).

Appellant next complains of counsel's failure to object to testimony referring to guns found in the row house. He contends that the jury could improperly infer from the presence of the guns that he was engaged in criminal conduct, as the weapons were in no way relevant to the prosecution at hand, he insists such reference was improper.

It is a fundamental principle of the criminal jurisprudence of this Commonwealth, that the Commonwealth may not introduce evidence of a defendant's prior criminal activity as substantive evidence of his or her guilt on the current charges.[6] However, the testimony here, while it may be irrelevant, did not amount to evidence of criminal conduct. In *Commonwealth v. Rivera*, 470 Pa. 131, 367 A.2d 719 (1976), evidence of habitual drug use was determined not to raise an inference of prior criminal conduct as by itself drug use was not a crime. Relying on *Rivera*, this court in *Commonwealth v. Bey*, 284 Pa.Superior Ct. 210, 425 A.2d 777 (1981) found that testimony of an observation of syringes in the defendant's apartment did not indicate criminal activity. Therefore, here we find that reference to the presence of guns in one's residence, when such is not illegal in and of itself, is not indicative of criminal conduct. Since we find no prejudice arising from such reference, counsel may not be deemed ineffective in not raising an objection, however as in *Rivera* we take this opportunity to note that such irrelevant evidence should be avoided.

Appellant's final claim of ineffectiveness is that counsel should have objected to the court's charge which was not objective and unbiased. Where a charge to the jury adequately states the law and creates no likelihood of confusion, counsel will not be deemed ineffective in failing to oppose the charge. *Commonwealth v. Rowles*, 501 Pa. 514, 462 A.2d 619 (1983). In reviewing a jury's instruction

**6.** Of course this rule is subject to a few exceptions, not applicable here, such as when the evidence is admitted to prove common design, scheme, intent or motive.

we must look to the whole charge, and not just isolated excerpts therefrom. *Commonwealth v. Waller*, 322 Pa.Superior Ct. 11, 468 A.2d 1134 (1983). After reviewing the trial court's entire charge, we find that it accurately and fairly reflected the law as it applies to the facts of the case at hand.

 Appellant further alleges that the trial court erred in *sua sponte* charging on the lesser-included offenses of simple possession. A trial court need not charge concerning a lesser-included offense unless there is a rational basis for acquitting the defendant of the offense charged but finding him or her guilty of the included charge. *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977).

 Here the trial court distinguished between simple possession; 35 P.S. § 780–113(16),[7] and possession with intent to deliver, *Id.* § 780–113.[8] This was proper as the Commonwealth was required to first show possession and then that such possession was with the intent to deliver to another. *Commonwealth v. Cardona*, 316 Pa.Superior Ct. 381, 463 A.2d 11 (1983); *Commonwealth v. Herman*, 288 Pa.Superior Ct. 219, 431 A.2d 1016 (1981). Hence, the court was not only permitted to charge on simple possession but was required to, in describing the crime of possession with intent to deliver. Therefore, no error was committed in the court's *sua sponte* addition of the simple possession charge.

7. (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

8. (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

*See Commonwealth v. Franklin,* 306 Pa.Superior Ct. 422, 452 A.2d 797 (1982).[9]

The final contention appellant raises is that the evidence was inadequate to prove beyond a reasonable doubt his guilt of possession with intent to deliver. He argues that it was not shown that he had exclusive control over the first floor where most of the drugs and the drug paraphernalia were found. As to the second floor, the police, according to appellant, found only a small quantity of drugs and money, as well as the presence of a second person. Again he urges us to find that exclusive control was not shown. He suggests also, that the only drugs that may have been found to be within his control was a small amount retrieved from the commode on the second floor.

When reviewing such a claim we must keep in mind that:

In deciding the sufficiency of evidence, we must accept as true all the evidence, and the reasonable inferences therefrom, upon which the factfinder could have based its verdict and then ask whether that evidence, viewed in a light most favorable to the Commonwealth as verdict winner, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Stasiak,* [305] Pa.Super. [257], 263, 451 A.2d 520, 523 (1982); *Commonwealth v. Banahasky,* 250 Pa.Super. 495, 499, 378 A.2d 1257, 1259 (1977).

*Commonwealth v. Pagan,* 315 Pa.Superior Ct. 7, 9, 461 A.2d 321, 322 (1983). In reviewing the evidence here in such light we may summarize the facts of this case in the following fashion. Upon their entry into the row house the police found two known addicts present on the first floor of the residence. The police subsequently located various controlled substances and drug paraphernalia, identified as being used in the distribution and sale of drugs, on the first floor.

**9.** Appellant also complains that the court empowered the jury to find him guilty of simple possession, even though he had not been charged with such. We find no need to address this claim as the court gave the jurors the alternative of finding appellant guilty of a lesser charge. Since the jury nonetheless convicted appellant of the greater charge he clearly suffered no actual prejudice.

The authorities entrance to the second floor revealed appellant exiting from a bathroom where a flushing commode was heard. The police recovered a small amount of heroin from the commode. Further inspection revealed considerable sums of money, including $1,300 in a wallet bearing appellant's identification, $1,000 in a suit apparently belonging to appellant, and $301 in the pants appellant was wearing at the time of the search. Though appellant contended that the first floor and second floor were separate apartments, with his girlfriend occupying the first floor and he the second, at the time the search warrant was executed, the second floor kitchen appeared to be not in service as a kitchen and the girlfriend was sharing the second floor bedroom.

If the Commonwealth is unable to prove that a suspect had a controlled substance on his person, the Commonwealth may show constructive possession of illicit drugs, and such may be demonstrated by showing that a defendant had power of control over and intended to exercise such control of such substance. *Commonwealth v. Davis*, 308 Pa.Superior Ct. 431, 454 A.2d 612 (1982); *Commonwealth v. Thompson*, 286 Pa.Superior Ct. 31, 428 A.2d 223 (1981). All facts and circumstances surrounding possession of drugs or narcotics are relevant in making a determination of whether contraband was possessed with the intent to deliver. *Commonwealth v. Fisher*, 316 Pa.Superior Ct. 311, 462 A.2d 1366 (1983). In addition to the quantity of drugs possessed, in determining whether there was an intent to deliver, the courts have also considered the presence of paraphernalia used in the narcotic trade as well as the presence of inordinately large sums of cash. *Fisher, supra; Commonwealth v. Bundridge*, 303 Pa.Superior Ct. 267, 449 A.2d 681 (1982); *Commonwealth v. Smith*, 250 Pa.Superior Ct. 460, 378 A.2d 1239 (1977). In light of the above evidence, the jury could reasonably find or infer that the row house was being used as a single household and

appellant and/or his girlfriend were in possession of various illicit drugs intending to sell them to others.[10]

However, appellant correctly points out that where more than one person has equal access to where drugs are stored, *presence alone* in conjunction with such access will not prove conscious dominion over the contraband. *Commonwealth v. Keblitis,* 500 Pa. 321, 456 A.2d 149 (1983); *Commonwealth v. Chenet,* 473 Pa. 181, 373 A.2d 1107 (1977); *Commonwealth v. Luddy,* 281 Pa.Superior Ct. 541, 422 A.2d 601 (1980). It must also be remembered that knowledge of the location of the narcotics and intent to exercise control over such may be inferred from access to such drugs and the other surrounding circumstances, even though others have equal access thereto. *Commonwealth v. Banahasky,* 250 Pa.Superior Ct. 495, 378 A.2d 1257 (1977). Even more important to the facts of this appeal is the principle that the Commonwealth may demonstrate constructive *or joint constructive possession,* from the totality of the circumstances, even though others may have had access to the drugs. *Commonwealth v. Macolino,* 503 Pa. 201, 469 A.2d 132 (1983); *Thompson, supra; Commonwealth v. Harris,* 263 Pa.Superior Ct. 110, 397 A.2d 424 (1979). A discussion of *Macolino* and *Harris* readily demonstrates the above principles.

In *Macolino,* contraband was found in a closet located in a bedroom shared by the defendant and his wife. The Supreme Court held that, in light of the additional presence in the bedroom of paraphernalia and other items associated with drug trafficking, a fact-finder could conclude that the defendant was aware of the drugs, that he exercised control over them, and that he intended to possess such contraband. While in *Harris,* the defendant whose mobility was limited as evidenced by his need of a wheel

10. The jury could reasonably have excluded the two known drug users, who were present on the premises, from being responsible for the intended drug trafficking as some of the drugs located on the first floor were secreted in the first floor kitchen and all sizable sums of money were located on the second floor.

chair, was found to have shared joint constructive possession with another of drugs found on a windowsill of an adjoining residence. The defendant's possession and control of drug paraphernalia established the connection with the drugs and his intent to exercise control over the controlled substances. Similarly here, appellant's actions in attempting to dispose of the small quantity of heroin, his joint control over the entire row house, and his possession of the large sums of money adequately established his control and intention to control at least some of the drugs, as well as his intention to deliver such to others.[11] Compare *Smith, supra* (defendant controlled area where drugs and paraphernalia were found and a large sum of money was found under a mattress where a girlfriend was sleeping; evidence was sufficient.)

Judgment of sentence affirmed.

11. For the purposes of this appeal it is unimportant whether the two drug users found on the premises and/or appellant's girlfriend were also involved in drug trafficking as the evidence at a minimum showed beyond a reasonable doubt that appellant was at least in joint constructive possession of the narcotics. *See Commonwealth v. Macolino, supra.*