**Commonwealth v. Meeker**

C.P. of Monroe County, no. 1675 Criminal 1998.

*Bernard Anderson, assistant district attorney,* for Commonwealth.

*William K. Sayer, public defender,* for defendant.

WALLACH MILLER, *J.,* June 11, 1999—On November 13, 1998, members of the Monroe County Drug Task Force executed a search warrant at 75 Analomink Street, East Stroudsburg, Monroe County, Pennsylvania. This is a two-story house with two apartments located on the

second floor. The number of apartments on the first floor is an issue here. The warrant was issued by a district justice upon an affidavit of probable cause which alleged that during a month of video surveillance, indicia of drug trafficking was observed at the rear door of the first floor apartment of this residence. The affidavit also alleged that 10 days previous to the request for the warrant, a controlled buy of crack cocaine was made at the first floor apartment of this address and that the police had received information from a reliable informant that certain males named "Drew" and "Jay" were selling drugs from this apartment and that the criminal histories of these two men revealed drug histories. The police also alleged they had information from another reliable informant that drugs were kept "outside in dirt." The affidavit went on to allege within the last 48 hours a controlled purchase of crack cocaine was made from the first floor apartment of this residence. On the warrant application, the owner is listed as John J. King. Under the heading "occupant or possessor of the premises to be searched," the warrant application says "Occupied by Archie Jerger and group known as the Florida Boys." On another page of the application is listed "Other known occupants of no. 75 Analomink Street, apartment no. 1 are known to be Michael T. Harreel a/k/a Rail; Karreem Johnson Jr. and Curtis D. Williams and Marcus S. Boomes."

Members of the Monroe County Drug Task Force entered the residence through the rear door and once inside, found numerous people, including the defendant, Karen Meeker.

A subsequent search of the first floor uncovered marijuana in a storage area located inside the apartment, and cocaine was found hidden outside in the house founda-

tion. Defendant was in a bedroom with several other people. She was searched, and 11 baggies of marijuana were found on her person.

After the defendant was arrested, she claimed that she lived and rented a separate apartment within the first floor of the building. This apartment was made by the erection of a piece of drywall and a curtain which separated it from the back portion of the first floor. This wall did not exist when a previous search warrant was executed by the police in February of 1998 at this same house. Thus, we can find it was built recently. Defendant claims that she only uses the front door, an entrance on the opposite side from where the drug trafficking was seen, when she enters and leaves her apartment. She also claims to rent two rooms, a separate kitchen and a bathroom. The separate kitchen and bath exist, but there was contradictory testimony as to whether they could be used.

Count I of the criminal information charges defendant with possession with intent to manufacture or deliver a controlled substance, that being the cocaine found in the outside foundation. Defendant is also charged with possession of a small amount of marijuana and possession of drug paraphernalia in Counts II and III, respectively.

After a preliminary hearing, all charges were bound over to this court. On April 29, 1999, defendant filed an omnibus pretrial motion requesting that we dismiss Count I, possession of cocaine with intent to deliver, and that we suppress the marijuana as charged in Count II. Count III, for possession of drug paraphernalia, was not contested.

After a hearing held May 29, 1999, we requested both counsel to submit legal authority to support their positions. We received a legal memorandum from the defendant but received nothing from the Commonwealth.

Defendant is requesting dismissal of Count I of the information alleging a lack of evidence to establish a prima facie case that she was in possession of any of the cocaine found. The Commonwealth's case appears to be one of constructive possession. "Where drugs are not found on a defendant's person, constructive possession can be established by 'showing that the defendant had power of control over and intended to exercise control [over] such substances.' " *Commonwealth v. Ocasio,* 422 Pa. Super. 272, 276, 619 A.2d 352, 354 (1993). An intent to maintain such conscious dominion may be inferred from the totality of the circumstances. *Commonwealth v. Macolino,* 503 Pa. 201, 469 A.2d 132 (1983).

In this case, the only evidence the Commonwealth presented was that the defendant was present inside the house with numerous other people when the warrant was executed. Where more than one person has equal access to where the drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband. *Commonwealth v. Davis,* 331 Pa. Super. 285, 480 A.2d 1035 (1984). The Commonwealth must introduce evidence demonstrating defendant's participation in the drug-related activity or evidence connecting defendant to the areas where the drugs are kept. *Macolino, supra.*

There was no evidence presented connecting defendant to the cocaine stored outside the premises or demonstrating that she participated in any cocaine-related activity. The drug traffic was taking place at the rear door, but the month-long video surveillance did not show Meeker entering or leaving this particular entrance. There was also no cocaine in the bedroom where she was found during the search. Furthermore, her name was not men-

tioned in the affidavit of probable cause. Because we find that the Commonwealth did not meet their burden of proof of showing a prima facie case on this count, defendant's motion for dismissal of Count I is granted.

The defendant has also filed a motion to suppress the marijuana found on her person. We note initially that the information filed by the district attorney charges defendant with possession of a small amount of marijuana for personal use. Under the statutes cited, this requires less than 30 grams. While we have no evidence of how much the 11 baggies weighed, we must assume that the amount meets the statutory requirements.

Defendant's first contention is that the search warrant was not validly issued by the district justice. Defendant asserts that the warrant did not describe that there were two separate apartments within the first floor, thereby making the warrant defective when the officers entered her bedroom. The warrant in this case only lists the address of 75 Analomink Street, first floor apartment, with no mention of a separate apartment on this floor.

The warrant clause of the Fourth Amendment of the United States Constitution mandates that a search warrant must particularly describe the place to be searched and the items to be seized. *U.S. v. Maryland,* 480 U.S. 79 (1987). A warrant's validity must be assessed on the basis of the information the officers disclosed or should have disclosed to the issuing magistrate when they applied for the warrant. *Commonwealth v. Kiessling,* 380 Pa. Super. 442, 552 A.2d 270 (1988).

Even if we take as true that there was a separate apartment on the first floor at 75 Analomink Street, there is nothing in the record that would indicate that the officers had this information to disclose to the issuing mag-

istrate at the time they applied for the warrant. We therefore find that the warrant was validly issued.

The second part of this analysis is whether the officer's failure to realize the overbreadth of their warrant was objectively understandable and reasonable? *Commonwealth v. [Norman] Wilson,* 395 Pa. Super. 523, 577 A.2d 913 (1990).

In this *Wilson* case, the officers executed a search warrant for a house where it was alleged that illegal sales of alcoholic beverages were taking place. The defendant was one of several people who rented a room in the house, and he had two locks on his door for which he only had the keys. During the search, the officers kicked down defendant's door and found contraband and alcohol. Defendant's suppression motion argued that since he lived in a separate room apart from the residence, his room should not have been searched.

The Superior Court agreed and determined that the search itself took place after the officers knew it was defendant's separate room they were about to search. The police were fully aware, in other words, that prior to the search the defendant had a separate room and decided to search it anyway. Because the facts clearly illustrated "the police officers had no objectively understandable and reasonable reasons for *not* realizing the overbreadth of their warrant," the evidence was suppressed. *Id.* at 526, 577 A.2d at 915. (emphasis added)

This case is distinguished from our facts. At the time of the search in this case, the officers had no information available to them that there was a separate apartment within the first floor premises. They were not even certain there was a second apartment when the search was being conducted due to the poorly constructed partition

and curtain, because access to Meeker's bedroom, where she was standing, could be made from other areas of the first floor. The officers could reasonably conclude that the first floor premises encompassed her room. Thus, unlike the officers in *Wilson,* we find that the police did have objective and understandable reasons for not realizing the overbreadth of their warrant.

However, our discussion does not end here because we must next determine whether the search of defendant's body went beyond the authority of the warrant.

In a totally different Superior Court decision, *Commonwealth v. [Robert] Wilson,* 429 Pa. Super. 197, 631 A.2d 1356 (1993), the police obtained a warrant to search premises at E-25 Lloyd Street. The affidavit named only the occupants of the residence. Neither the affidavit nor the warrant authorized a search of the defendant, Robert Wilson, whose name did not appear anywhere in either instrument. Furthermore, the police did not have any prior information about this Wilson before they executed the warrant.

When the police entered the premises, they stopped the defendant who was running towards the rear of the building. They searched him and found drugs and arrested him for possession of cocaine. Defendant thereafter filed a suppression motion and argued the search went beyond the scope and authority of the search warrant.

Our Superior Court reversed the trial court and held that because the warrant did not mention the defendant, the police acted beyond authority of their warrant. *Id.* at 202, 631 A.2d at 1359. The court further held Pennsylvania law requires that every search warrant name, with particularity, the person or place to be searched. See Pa.R.Crim.P. 2005(e). In order to search or arrest others who may be present, the police must establish an inde-

pendent probable cause. *Id.* In Wilson's case, because the search warrant only authorized a search of the residence and named occupants not including Wilson, the police were required to have probable cause in order to search his person. Hence, the suppression motion was granted.

It so follows in this case. Neither the warrant nor the affidavit for the warrant mentions or references defendant. The police had no prior information about her before they made their entry. Again, the defendant was not shown entering the premises on the month-long surveillance tape.

Based on the evidence introduced by the Commonwealth at our hearing and a review of appellate law on these issues, which is very clear, we find that the police exceeded their authority as to this defendant. They had the right to detain her during the raid but without independent evidence giving them probable cause to believe she was somehow involved with the drug trafficking at this premises, a search inside her bra and in her crotch was unreasonable.

As we have stated many times in our opinions, our federal and state constitutions do not prohibit all searches and seizures. However, they do protect all citizens against unreasonable searches and seizures. We recognize drug task forces such as the one executing this warrant are formed to promote the "war on drugs." We must remember that even in war, there are rules.

## ORDER

And now, June 11, 1999, defendant's omnibus pretrial motion is granted.