J-A06034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARREN TALBERT | |
| Appellant | No. 51 EDA 2014 |

Appeal from the Judgment of Sentence November 15, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004677-2012 and CP-23-CR-0004680-2012

BEFORE: PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 01, 2015**

Darren Talbert has filed this direct appeal from his aggregate judgment of sentence of 6-12 years' imprisonment followed by 5 years' probation for drug-related and firearms convictions. We affirm Talbert's convictions. We remand for resentencing on all convictions, because Talbert's mandatory minimum sentences for possession with intent to deliver a controlled substance ("PWID")[1] are unconstitutional. *See Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013); *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super.2014) (*en banc*).

---

[1] 35 P.S. § 780-113(a)(30).

On July 12, 2012, Talbert and a co-defendant, Mrwan Mohamed, were arrested and charged with various offenses in two separate actions. In No. CP-23-CR-0004680-2012 ("Case I"), Talbert was charged with, *inter alia*, three counts of PWID[2] and three counts of conspiracy to commit PWID.[3] These charges arose from Talbert's sales of heroin to an undercover police officer on July 3rd, 11th and 12th of 2012. In No. CP-23-CR-0004677-2012 ("Case II"), Talbert was charged with, *inter alia*, (1) PWID with regard to 85 bags of heroin discovered in the car he was driving at the time of the third drug sale, (2) conspiracy to possess the 85 bags of heroin with intent to deliver,[4] (3) possession of a firearm in the car with obliterated marks of identification (specifically, obliterated serial numbers),[5] and (4) carrying a firearm without a license.[6] The trial court denied Talbert's pretrial motion to suppress and consolidated Cases I and II for trial. In Case I, the jury found Talbert not guilty of PWID with regard to the alleged sale on July 3, 2012. The jury found Talbert guilty of the remaining charges in Case I and Case II. N.T., 8/16/13, pp. 239-48.

---

[2] 35 P.S. § 780-113(a)(30).

[3] 18 Pa.C.S. § 903.

[4] 18 Pa.C.S. § 903.

[5] 18 Pa.C.S. § 6117(a).

[6] 18 Pa.C.S. § 6106(a)(2).

The trial court submitted two special interrogatories to the jury to determine whether Talbert was eligible for the mandatory minimum sentence for PWID under 42 Pa.C.S. § 9712.1. The first interrogatory inquired whether Talbert or his accomplice, Mohamed, possessed a firearm when Talbert sold heroin to the undercover officer. The second inquired whether the heroin weighed at least one gram but less than five grams, and whether Talbert or his accomplice, Mohamed, were in possession or control of a firearm at the time of the offense. With regard to each interrogatory, the trial court instructed the jury to answer "yes" on the verdict slip if it found that the Commonwealth proved each element beyond a reasonable doubt. N.T., 8/16/13, pp. 213, 215-16. The jury answered both interrogatories "yes". N.T., 8/16/13, p. 249.

In Case I, based on Talbert's conviction for PWID on July 12, 2012, the trial court sentenced him to 5-10 years' imprisonment, the mandatory minimum under section 9712.1 for PWID while in physical control or possession of a firearm. N.T., 11/15/13, p. 16. Talbert received consecutive sentences of 1-2 years' imprisonment for PWID on July 11, 2012 and 5 years' probation for conspiracy to commit PWID. *Id*., p. 16. In Case II, the court sentenced Talbert to 5-10 years' imprisonment on his PWID conviction for the 85 bags of heroin, the mandatory minimum under section 9712.1. *Id*., pp. 16-17. Talbert received a consecutive sentence of 1-2 years' imprisonment for possession of a firearm with obliterated marks of identification, a concurrent sentence of 1-2 years' imprisonment for carrying

a firearm without a license, and 5 years' consecutive probation for conspiracy to commit PWID. **Id**. Talbert's sentence in Case II ran concurrently with his sentence in Case I, making his aggregate sentence 6-12 years' imprisonment plus 5 years' probation. This timely direct appeal followed. Both Talbert and the trial court complied with Pa.R.A.P. 1925.

Talbert raises four issues in this appeal:

1. Did the suppression court err by refusing to suppress the contents of a vehicle that was unlawfully seized by the police?

2. Was the evidence insufficient as a matter of law to sustain [Talbert's] convictions for constructively possessing the drugs and firearm found inside an air conditioning vent in the vehicle he was driving, where DNA evidence proved that someone else owned the firearm and the drugs in the bag were different than what [Talbert] was alleged to have delivered?

3. Was the evidence insufficient as a matter of law to sustain [Talbert's] conviction for conspiracy?

4. Should this matter be remanded to correct the unconstitutional mandatory minimum sentence imposed on [Talbert], pursuant to **Commonwealth v. Newman**, 2014 Pa. Super. 178 (Aug. 20, 2014)?

Brief For Appellant, p. 4. Talbert's counsel stated during oral argument that he was abandoning his first issue (suppression of the contents of the vehicle). Therefore, we will not address this question.

In his second issue on appeal, Talbert argues that the evidence was insufficient to sustain his convictions in Case II relating to the 85 bags of

- 4 -

heroin and the firearm found inside the Uplander. Specifically, Talbert argues that the evidence does not prove that he was in possession of these items. We disagree.

Our standard of review for challenges to the sufficiency of the evidence is well-settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super.2003) (citations omitted).

Construed in the light most favorable to the Commonwealth, the evidence adduced at trial was as follows: Officer McAleer testified that on July 3rd, 11th and 12th of 2012, while in her undercover capacity, she purchased six bags of heroin from Talbert, a drug dealer that she knew as "Money." N.T., 8/15/13, pp. 147-49, 154-57. On July 11, 2012 and July 12, 2012, Officer McAleer observed Talbert driving the Uplander to each sale

location. *Id*. at 157-60, 165. On July 11, 2012, Talbert was driving by himself, but on July 12, 2012, he had a passenger in the front seat and two children in the back seat. *Id*. at 161. The officer submitted the substance that she bought from Talbert to a laboratory and confirmed that it was heroin. *Id*. at 197, 220-21.

Other officers performed surveillance of the undercover buys. N.T., 8/15/13, p. 189. Detective Bernhardt observed Officer McAleer perform three undercover buys, *Id*. at 226-29, but he only saw Talbert's face on July 11th and July 12th. N.T., 8/16/13, 17. He also watched as Talbert arrived in the Uplander on July 11th and July 12th. N.T., 8/15/13, pp. 228-30; N.T., 8/16/13, p. 18. On July 12, 2012, when Officer McAleer signaled, Detective Bernhardt and assisting officers arrested Talbert and the adult passenger, Mohamed. N.T. 8/15/13, pp. 230-32; N.T., 8/16/13, pp. 11, 67-71. During the arrest, the police recovered $570.00 and a cell phone from Talbert and $16.00 and a cell phone from Mohamed. N.T., 8/16/13, pp. 11, 73-74.

The following day, Detective Bernhardt found 85 bags of heroin and an operable firearm together in the air-conditioning vent to the left of the steering wheel. N.T., 8/15/13, pp. 236-40, 242; N.T., 8/16/13, pp. 41-43. The 85 packets of heroin had a different stamp ("blackjack") than the logo on the packets that Talbert sold to Officer McAleer ("starbucks"). Mohamed's DNA was found on the firearm. N.T., 8/16/13, pp. 41-42. In the center console, Detective Bernhardt found a Visa debit card in Talbert's

name as well as mail, a receipt, and an impound release form for the vehicle, all made out to Talbert. N.T., 8/15/13, pp. 244-47; N.T., 8/16/13, pp. 31-33. Although the vehicle was registered to Aaron Talbert-Wilkinson, Talbert-Wilkinson had been continuously incarcerated from May 2012 through July 2012. N.T., 8/16/13, p. 60.

Lieutenant Michael Boudwin of the Narcotics Unit of the Delaware County CID testified as an expert witness in the field of illegal drugs, drug investigations, and drug trafficking. N.T., 8/16/13, pp. 97-98. The lieutenant provided a detailed description of the global as well as local heroin market. N.T., 8/16/13, pp. 98-104. In the lieutenant's opinion, Talbert possessed the 85 bags of heroin in the vehicle with the intent to distribute them, because a user would only buy two to four bags of heroin at a time, as opposed to 85, and the officers did not recover any indicia of personal use in the Uplander. N.T., 8/16/13, pp. 104-07.

In narcotics possession cases,

> 'the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband.' **Commonwealth v. Thompson**, [], 428 A.2d 223, 224 ([Pa.Super.]1981). Actual possession is proven 'by showing ... [that the] controlled substance [was] found on the [defendant's] person.' **Commonwealth v. Macolino**, [], 469 A.2d 132, 134 (Pa.1983). If the contraband is not discovered on the defendant's person, the Commonwealth may satisfy its evidentiary burden by proving that the defendant had constructive possession of the drug. **Id**.

Our Supreme Court has defined constructive possession as 'the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control.' ***Macolino***, 469 A.2d at 134. In the words of our Supreme Court, 'constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement.' ***Commonwealth v. Johnson***, [], 26 A.3d 1078, 1093 (Pa.2011) (internal quotations, citations, and corrections omitted). It is a 'judicially created doctrine ... [that] enables law enforcement officials to prosecute individuals in situations where the inference of possession is strong, yet actual possession at the time of arrest cannot be shown.' Mark I. Rabinowitz, Note, ***Criminal Law Constructive Possession: Must the Commonwealth Still Prove Intent?— Commonwealth v. Mudrick***, 60 TEMPLE L.Q. 445, 499–450 (1987).

To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the defendant. Our Supreme Court 'has recognized that constructive possession may be found in one or more actors where the item [at] issue is in an area of joint control and equal access.' ***Johnson***, [] 26 A.3d at 1094 (internal quotations, citations, and corrections omitted). Nevertheless, 'where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband.' ***Commonwealth v. Davis***, [], 480 A.2d 1035, 1045 (Pa.Super.1984) (emphasis omitted).

For the Commonwealth to prove constructive possession where more than one person has access to the contraband, 'the Commonwealth must introduce evidence demonstrating either [the defendant's] participation in the drug related activity or evidence connecting [the defendant] to the specific room or areas where the drugs were kept.' ***Commonwealth v. Ocasio***, [], 619 A.2d 352, 354–

- 8 -

> 355 (Pa.Super.1993). However, '[a]n intent to maintain a conscious dominion may be inferred from the totality of the circumstances ... [and] circumstantial evidence may be used to establish a defendant's possession of drugs or contraband.' ***Macolino****,* 469 A.2d at 134–135 (internal citations omitted).

***Commonwealth v. Vargas****,* -- A.3d --, 2014 WL 7447678, *8 (Pa.Super., Dec. 31, 2014) (*en banc*) (citations omitted). Constructive possession cases are fact-sensitive; "a review of case law pertaining to constructive possession indicates the difficulty of drawing bright lines in this area of the law." ***Commonwealth v. Stembridge****,* 579 A.2d 901, 904 (Pa.Super.1990).

The evidence at trial establishes that Talbert was in constructive possession of the heroin and firearm found in the Uplander. At the time of Talbert's arrest, Talbert-Wilkinson, the owner of the Uplander, had been continuously incarcerated for two months, and there was abundant evidence that Talbert had been operating the Uplander for an extended period of time and treated it as if it belonged to him. Talbert's bank cards and mail were in the center console along with traffic tickets and a receipt confirming payment for release of the Uplander from an impoundment yard. On July 11, 2012, Talbert drove the car by himself to the site of his transaction with Officer McAleer. The next day, Talbert drove the car with Mohamed and two children in the backseat. On each occasion, Talbert exited the vehicle and sold heroin to Officer McAleer. There were bags of heroin and a firearm in

plain view in an air vent directly to the left of the steering wheel, easily within reach of the driver, Talbert. Collectively, this evidence demonstrates Talbert's "ability to exercise conscious dominion over the [heroin and the firearm]," because he had "the power to control [these items] and the intent to exercise that control." ***Macolino, supra***, 469 A.2d at 134; ***see also Commonwealth v. Kirkland***, 831 A.2d 607, 610 (Pa.Super.2003) (evidence established that defendant constructively possessed crack cocaine found in vehicle by officer looking for gun after defendant's arrest for assaulting his wife, so as to support conviction for possession of controlled substance, even though defendant did not own vehicle, arresting officers did not see defendant in vehicle, cocaine was in back seat of vehicle, vehicle's front windows were down, and vehicle was unlocked; defendant's wife told officers defendant had arrived in vehicle, defendant possessed keys to vehicle, cocaine was situated on plate lying in plain view on back seat of vehicle, and defendant stated "[y]a'll found narcotics" when officer returned from investigating vehicle).

Relying upon ***Commonwealth v. Juliano***, 490 A.2d 891 (Pa. Super. 1985), and ***Commonwealth v. Boatwright***, 453 A.2d 1058 (Pa. Super. 1982), Talbert argues that the Commonwealth failed to muster sufficient evidence of constructive possession. In ***Juliano***, police officers searched a car in which the defendant was a passenger along with three other persons. The officers seized a satchel on the floor in front of the defendant's seat

which contained a counterfeit controlled substance. This Court held that there was no evidence, such as furtive movements or attempts to escape, that indicated the defendant's knowledge of the satchel's contents. *Juliano*, 490 A.2d at 894. Similarly, in *Boatwright*, a police officer responding to a call concerning three "suspicious" men in a parked car saw the defendant, seated in the front passenger seat, "moving towards his left rear." On the left rear floor, the officer found a gun registered to a person not in the car. We held that there was insufficient proof of the defendant's possession of the firearm. *Boatwright*, 453 A.2d at 1058.

The defendants in *Juliano* and *Boatwright* were passengers inside a vehicle who were only momentarily in close proximity to the items seized by police. The defendant in *Juliano* sat near *one* unopened satchel on *one* occasion without engaging in any suspicious movements or conduct indicating his control over the satchel. The defendant in *Boatwright* sat near and "moved towards" *one* gun on *one* occasion. The evidence in this case is far different. Prior to his arrest, Talbert drove the Uplander for months and treated it as his own by leaving mail and other personalty in the center console. On the day before and the day of his arrest, he drove the Uplander to prearranged locations, exited the vehicle, and sold bags of heroin to an undercover police officer moments later. Immediately within reach of the driver's seat was not one but *85* easily visible bags of heroin, the same drug that he sold to the undercover officer. Under these

circumstances, a jury could reasonably conclude that Talbert's proximity to the heroin was more than coincidence, and that he exercised conscious dominion over the 85 bags of heroin.[7]

_____

[7] In addition, **Commonwealth  v. Johnson**, **supra**, a decision cited in the table of contents of Talbert's brief but not discussed in his brief, is distinguishable from the present case.  In **Johnson**, an undercover police officer solicited drugs from the defendant.  The defendant called a drug supplier (Wilson), arranged to obtain a single bundle of heroin and met Wilson on a public street.  Following a conversation, Wilson left the defendant, retrieved a bundle of heroin from his Buick, and delivered it to the defendant.  The defendant delivered the bundle to the undercover police officer and returned money to Wilson.  Our Supreme Court held that the defendant was not in constructive possession of a second bundle of heroin recovered from Wilson's Buick:

> Importantly, there was no proof presented at trial that [the defendant] had any connection to the Buick whatsoever as no evidence of any ownership interest by him in the Buick was introduced, and he was never observed in or near the Buick, at any time before or after Wilson's entry.  Likewise, there was no evidence brought forward at trial to show that [the defendant] had any ability to enter into the Buick's passenger compartment or trunk if he so desired. [The defendant] had his own vehicle, and it was only Wilson who had a set of keys for the Buick. Further, no evidence was offered to indicate [the defendant] had any other means of access to the Buick via a separate key or a remote entry device. Consequently, the totality of the evidence simply did not establish the *sine qua non* for the trial court's finding that [the defendant] was in joint constructive possession with Wilson of the second bundle of 'new era' heroin stored inside the Buick, since the evidence did not demonstrate that [the defendant] had joint control over, and equal access to, the Buick with Wilson, nor did it support an inference that [the defendant] had any ability to exercise conscious

*(Footnote Continued Next Page)*

- 12 -

Talbert also suggests that the heroin and the firearm inside the vehicle belonged to Mohamed instead of him, because the bags of heroin had a different stamp ("blackjack") than the stamp on the bags that he sold to Officer McAleer ("starbucks"), and Mohamed's DNA was on the firearm. This evidence might show that Talbert and Mohamed had joint constructive possession, but it does *not* show that Talbert *lacked* constructive possession.

Individuals can have joint constructive possession of an item of contraband when they have equal access to the item. **Macolino**, **supra**, 469 A.2d at 134 (evidence, viewed in totality, demonstrated that husband maintained conscious dominion over cocaine found in bedroom closet which he shared with his wife; fact that wife could also have maintained conscious dominion over cocaine did not preclude conviction of husband, because possession of illegal substance need not be exclusive; two or more can possess same drug at same time). Because Talbert, the frontseat driver, was in closer proximity to the heroin and firearm than Mohamed, the backseat passenger, Talbert arguably had greater access than Mohamed and thus was in sole constructive possession of these items instead of joint

*(Footnote Continued)* —————————

> dominion over the bundle of heroin in the Buick, or
> any power or intent to control it.

**Id**., 26 A.3d at 1094-95. In contrast, in this case, Talbert obviously had access to the Uplander and used it to facilitate drug sales, since he drove the Uplander to the sites of drug transactions with Officer McAleer. Thus, **Johnson** does not help Talbert's cause.

constructive possession. At a minimum, Talbert and Mohamed had joint constructive possession, thus satisfying the possession elements of the PWID and firearms charges in Case II. *Macolino*, *supra*. Regardless of whether Talbert had sole or joint constructive possession, the evidence does *not* support his claim that he lacked constructive possession.

Talbert also argues that he was merely present in the vehicle where Detective Bernhardt subsequently discovered the 85 bags of heroin and the firearm. Mere presence, he continues, is insufficient to establish constructive possession of these items. Brief For Appellant, p. 13 (citing, *inter alia*, *Commonwealth v. Spencer*, 621 A.2d 153, 155 (Pa.Super.1993) (mere presence of passenger in car insufficient to establish constructive possession of drugs located in driver side armrest)). For the reasons articulated above, the evidence demonstrates that Talbert was not merely present in the Uplander, but that he treated it as his own and used it to transport heroin to the sites of drug sales.

In sum, Talbert's efforts to recast the evidence in a less damaging light are unavailing. The evidence is sufficient to sustain his PWID conviction in Case II relating to the 85 bags of heroin and his firearms convictions in Case II.

In his third issue on appeal, Talbert claims that the evidence was insufficient to sustain his conspiracy convictions in Cases I and II. Our

standard of review is the same as in our preceding discussion of the constructive possession issue. **See Troy**, **supra**.

A criminal conspiracy exists when "the defendant (1) enter[s] into an agreement to commit or aid in an unlawful act with another person or persons, (2) with shared criminal intent and (3) an overt act [is] done in furtherance of the conspiracy." **Commonwealth v. McCall**, 911 A.2d 992, 996 (Pa.Super.2006) (citing 18 Pa.C.S. § 903). The conduct of the parties and the surrounding circumstances may create a web of evidence linking the accused to the alleged conspiracy. **Commonwealth v. Bricker**, 882 A.2d 1008, 1017 (Pa.Super. 2005). A conspiratorial agreement may be inferred from the relation between the parties, their knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the crime. **Id**. This Court has explained the agreement element of conspiracy as follows:

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstance of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation . . . . Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the

actions of his coconspirators in furtherance of the conspiracy.

**McCall**, 911 A.2d at 996-97.

On appeal, the Commonwealth need not preclude every possibility of innocence, and this Court must affirm the conviction unless "the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Commonweath v. Adams**, 39 A.3d 310, 323 (Pa.Super.2012).

Although Talbert admits that Mohamed traveled with him to the site of the drug sale on July 12th, Talbert argues that there is no evidence of a conspiracy, because "there is no evidence. . .that Mohamed actually *did anything*. He was merely present at the scene when [Talbert] was arrested." Brief For Appellant, p. 14 (emphasis in original). Talbert adds that the presence of Mohamed's fingerprint on the firearm, and the difference in logos between the drugs that Talbert sold to Officer McAleer from the drugs found in the Uplander, suggest that he and Mohamed were "independent operators" instead of conspirators. Reply Brief For Appellant, p. 3.

Talbert's self-serving view of the evidence is unavailing. Mere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient to establish a conspiracy. **In Re V.C.**, 66 A.3d 341, 349 (Pa.Super.2013). "Nor is flight from the scene of a crime, without more, enough." **Id**. On the other hand, these factors, combined with

other direct or circumstantial evidence, may provide sufficient evidence of a conspiracy. *Id*. In this case, Talbert and Mohamed traveled together to the heroin sale on July 12th, but there is more evidence than Mohamed's mere presence. There was a firearm with Mohamed's fingerprints stuffed in a vent in plain view next to the driver's seat, where Talbert sat, along with 85 bags of heroin bearing a different logo than the drugs that Talbert sold to Officer McAleer. These items, and their proximity to Talbert, is circumstantial evidence of an agreement between Talbert and Mohamed to sell drugs bearing different logos and to protect themselves in this dangerous enterprise with Mohamed's gun. This evidence is not "so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Adams*, 39 A.3d at 323. We reject Talbert's challenge to the sufficiency of the evidence underlying his conspiracy convictions in Cases I and II.

In his final argument, Talbert contends that his mandatory minimum sentence for PWID under 42 Pa.C.S. § 9712.1[8] is unconstitutional. We find

_____

[8] Section 9712.1 provides:

> Any person who is convicted of a violation of section 13(a)(30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's

*(Footnote Continued Next Page)*

Talbert's PWID sentences in Case I and II unconstitutional based on this Court's recent decision in **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super.2014), which applies the mandate of the United States Supreme Court in **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151 (2013).

The United States Supreme Court decided **Alleyne** in June 2013, two months before Talbert's trial. **Alleyne** held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory minimum must be submitted to a jury and proved beyond a reasonable doubt. **Id**., 131 S.Ct. at 2160-61. During Talbert's trial, the trial court attempted to comply with **Alleyne** by submitting two special interrogatories to the jury to determine whether Talbert was eligible for the mandatory minimum sentence under section 9712.1. The trial court instructed the jury that the Commonwealth was required to prove all elements of each interrogatory beyond a reasonable doubt. The jury answered "yes" to each interrogatory. On November 15, 2013, the trial court imposed the mandatory minimum sentence pursuant to section 9712.1 in one of Talbert's PWID convictions in Case I and in his PWID conviction in Case II.

_(Footnote Continued)_ _____

> accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

42 Pa.C.S. § 9712.1(a).

Nine months after sentencing, during this direct appeal, we held in **Newman** that **Alleyne** rendered section 9712.1 unconstitutional in its entirety. **Newman**, 99 A.3d at 98 (in view of **Alleyne**, "plainly, section 9712.1 can no longer pass constitutional muster"). **Newman** reasoned that the mandatory minimum prescribed in section 9712.1(a) is not severable from the "enforcement arm" of the statute, section 9712.1(c). **Id**. at 101-03. Since section 9712.1 is unconstitutional, trial courts must impose sentence "without consideration of any mandatory minimum sentence provided by Section 9712.1." **Id**. at 103.

An unconstitutional statute such as section 9712.1 is a nullity; "[i]t is as if it were never enacted." **Glen–Gery Corp. v. Zoning Hearing Bd. of Dover Tp.**, 907 A.2d 1033, 1043 (Pa.2006). When the court sentences the defendant under an unconstitutional sentence, his sentence is a nullity, and resentencing is compulsory. **Commonwealth v. Muhammed**, 992 A.2d 897, 903 (Pa.Super.2010) (unconstitutional statute is ineffective for any purpose, because its unconstitutionality dates from time of its enactment, not merely from date of decision holding it so; trial court lacked statutory authority to convict and sentence appellant under this provision).

Because Talbert's PWID sentences under section 9712.1 are nullities, we must vacate them. We do not agree with the Commonwealth's contention during oral argument that application of section 9712.1 is mere harmless error. As we recently observed in a post-**Newman** decision, a

- 19 -

sentence imposed under an unconstitutional statute is *per se* illegal and must be corrected:

> [I]f ***Newman's*** overriding conclusion is … that mandatory minimum statutes in Pennsylvania must be stricken in their entirety as facially unconstitutional, any discussion of harmless error is rendered moot. This is because, once the Court concludes that the subsections cannot be severed and must all be struck down, there is no statutorily authorized sentence upon which a harmless error analysis may be applied. ***See***, ***e.g.***, [***Commonwealth v.***] ***Rivera***, [95 A.3d 913, 915 (Pa.Super.2014)] (stating, "[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction[ ]").

***Commonwealth v. Fennell***, 105 A.3d 13, 19 n.5 (Pa.Super.2014).

Furthermore, because *vacatur* of Talbert's PWID sentences upsets the trial court's entire sentencing scheme, we remand for resentencing on all counts of conviction. ***Commonwealth v. Goldhammer***, 517 A.2d 1280, 1281 (Pa.1986) (if appellate court alters overall sentencing scheme, then remand for resentencing is proper); ***Commonwealth v. Vanderlin***, 580 A.2d 820, 831 (Pa.Super.1990) (if trial court errs in its sentence on one count in multi-count case, then all sentences for all counts will be vacated and matter remanded for court to restructure its entire sentencing scheme). The trial court is certainly not to blame for this development. The trial court intelligently applied the law in existence at the time of trial and sentencing and did not have the benefit of our decision in ***Newman***. Resentencing is necessary despite the trial court's efforts, not because of them.

Convictions affirmed; judgment of sentence vacated; case remanded for re-sentencing.  Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/1/2015