J-A08027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 71 EDA 2017 |
| WILLIE A. WILLIAMS, | : | |
| | : | |
| Appellee | : | |

Appeal from the Order November 29, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009535-2015

BEFORE:   PANELLA, J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 1, 2018**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Philadelphia County, granting Willie A. Williams' post-sentence motion in arrest of judgment and vacating his convictions on two counts of possession of a controlled substance with intent to deliver (PWID), 35 P.S. § 780-113(a)(30), and one count of criminal conspiracy, 18 Pa.C.S.A. § 903.[1]  After our review, we affirm.

The facts of this case are as follows:

On August 31, 2015, Police Officer [Dierta] Cuffie and other members of the Narcotics Field Unit set up a narcotics surveillance

---

[1] Williams was also convicted of knowing and intelligent possession of a controlled substance, 35 P.S. § 780-113(a)(16) (ungraded misdemeanor) and tampering with evidence, 18 Pa.C.S.A. § 4910. The court denied the motion in arrest of judgment with respect to those convictions.

---

*   Retired Senior Judge assigned to the Superior Court.

at 6742 North 18th Street [in Philadelphia], due to numerous complaints of drug sales at that address. The house was registered to Daniel Simons. A confidential informant ("CI") was provided with pre-recorded buy money, and knocked on the door[,] which was opened by Mr. Simons. The CI spoke with Mr. Simons, who then made a phone call. Thereafter, a Neon automobile approached, an unknown black male exited the vehicle, and went inside the property. The CI returned and turned over to the officers one purple packet of crack cocaine. The Neon and unknown black male were not stopped or seen [again]. Appellee Mr. Williams was not seen at all during this incident. On September 1, 2015, the surveillance operation was again made on that property. The CI went to the house. Simons was outside, and spoke with the CI, who gave Simons the pre-recorded buy money. Simons made a phone call, and shortly thereafter, a Buick automobile appeared and parked in front of the house. Appellee Williams then exited the house, entered the Buick, exited the Buick, then re-entered the property, along with Simons and the CI. The CI returned and turned over crack cocaine. The Buick was not stopped or seen again. On September 2, 2015, police again set up the surveillance operation. The CI went to the house, knocked on the door, and was admitted by Mr. Simons. The CI returned with two purple packets of crack cocaine. Appellee Williams again was not present. Later on September 2, 2015, police executed a search warrant for the property. During the execution of the warrant, Police Officer Weaver, who was in the back of the property, observed white Styrofoam particles falling from the side of the air conditioning unit in the second floor rear window of the property. Appellee Williams was arrested along with the other people in the home, but was not found to be in possession of either drugs or money. In the room where he was arrested, which is the room where the police officer observed Styrofoam falling from the window, police recovered one packet containing 16 purple packets of crack cocaine near a window air conditioner unit, two clear baggies of powder cocaine on a dresser, $20 in pre-recorded buy money from under a mattress, $256 in cash, a yellow probation card, with Williams' name, and Williams' ID card, listing his address as 7205 North 21st Street. Simons was arrested in the middle bedroom, and recovered from him was $4.00, a door key and a letter listing his address as the house being searched, 6742 North 18th Street. No cell phones were recovered.

*Trial Court Opinion, 2/27/17, at 1-3.*

Following a bench trial before the Honorable Tracy Brandeis-Roman, Williams was convicted of two counts of PWID, one count of conspiracy, one count of knowing and intelligent possession of a controlled substance, and one count of tampering with evidence. The court sentenced Williams to 11½ to 23 months' incarceration on the tampering with evidence conviction, with immediate parole, and one year of probation for each of the remaining four convictions, to run consecutively.

Williams filed a post-sentence motion claiming that the evidence was insufficient to sustain his two PWID convictions and his conspiracy conviction. The court granted Williams' motion and vacated those convictions. The Commonwealth filed this timely appeal, raising the following issues for our review:

1. Was the evidence sufficient to sustain defendant's convictions for possessing a controlled substance with intent to deliver, where defendant was arrested in a room with numerous packets of crack cocaine and hundreds of dollars in cash, including pre-recorded buy money?

2. Was the evidence sufficient to sustain defendant's conviction for criminal conspiracy, where defendant aided his conspirator in selling three packets and one chunk of crack cocaine to a confidential informant?

*Appellant's Brief, at 1.*

The standard of review for the trial court as it passes upon a motion in arrest of judgment, is limited to a determination of the absence or presence of that quantum of evidence necessary to establish the elements of the crime. The trial court is required to view the evidence in the light most favorable to the

Commonwealth, as verdict winner, and may not alter the verdict based on a redetermination of credibility or a re-evaluation of the evidence. Before granting an arrest of judgment, the trial court must find the evidence supporting the verdict to be so weak and inconclusive that a jury of reasonable persons would not have been satisfied as to the accused's guilt. . . . It [is] not the function of the trial court, in reviewing post-trial motions, to reweigh the evidence presented at trial.

*Commonwealth v. Bigelow*, 611 A.2d 301, 303-04 (Pa. Super. 1992) (citations omitted). *See also Commonwealth v. Marquez*, 980 A.2d 145, 148 (Pa. Super. 2009) (en banc). Further, "[t]he Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa. Super. 2016) (quoting *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012)).

In his motion, Williams claimed the Commonwealth did not prove beyond a reasonable doubt "that he either possessed the narcotics with intent to deliver, actually sold or delivered narcotics, or was part of a conspiracy to sell or deliver narcotics." Post-Sentence Motion, 11/23/16, at ¶ 6. Williams argued:

[He] was never seen on the first day of the narcotics surveillance. He was seen on the second day but he was never seen interacting with the CI in any direct manner. He was not seen on the third day prior to the execution of the search warrant. Instead, Mr. Simons was seen all three days. In fact, Mr. Simons was the only one seen interacting with the CI. Mr. Simons is seen answering the door to the home on two occasions and on the third occasion he is seen already outside and accepts money from the CI. Mr.

> Simons is the one who owns the house [about which] police received complaints of narcotics sales and those complaints specifically mention a Daniel Simons. The Commonwealth likewise failed to present sufficient evidence that [Williams] was involved in a criminal conspiracy to sell or deliver narcotics. [Williams] is never seen interacting with either Mr. Simons or the CI on any of the days.

*Id.* at ¶ 8. Williams further claimed that the Commonwealth did not argue, or present expert testimony to establish, that the circumstances of the arrest or narcotics recovery indicated possession with intent to deliver. *Id.* at ¶ 7. Finally, Williams contended that the Commonwealth likewise failed to present evidence of criminal conspiracy, stating that he was never seen on day one or day three of the surveillance, and was "never seen interacting with either Mr. Simons or the CI on any of the days." *Id.* at ¶ 9.

> The Commonwealth would argue seeing [Williams] on one day enter the house with the CI and Mr. Simons, his presence in this house where drugs are sold, his identification with the money and his arrest near where the drugs were recovered is enough. However, on cross-examination, this evidence [i]s admitted to be perhaps incorrect. **The Officer could not know who else might have been in the house on any given date and admitted [Williams] never directly interacted with the CI or Mr. Simons. She admitted there were other individuals in the home, potentially in the same room as [Williams] during the search, that were not arrested. She admitted that the identification might not have been with the money.** Given these admissions on cross-examination, the Commonwealth has not shown that [Williams] was part of a drug selling conspiracy.

*Id.* (emphasis added).

The Controlled Substances Act defines PWID as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

- 5 -

* * * *

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(30).   A person is guilty of conspiracy with another person or persons to commit a crime if, with the intent of promoting or facilitating its commission, he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903.

The Commonwealth maintains that the evidence presented at trial established that Williams "helped his co-conspirator Daniel Simons sell crack cocaine to a confidential informant." Appellant's Brief, at 8. The Commonwealth also argues that Williams "was arrested in a room containing numerous packets of crack cocaine and hundreds of dollars in cash, including $20 of pre-recorded buy money" and therefore the evidence was sufficient to convict him of PWID and criminal conspiracy. *Id.*

Even viewed in the light most favorable to the Commonwealth, the Commonwealth did not prove constructive possession. *See Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983) (constructive possession is "the

ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control."); *see also* **Commonwealth v. Davis**, 480 A.2d 1035, 1045 (Pa. Super. 1984) ("where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband."). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." **Commonwealth v. Mudrick**, 507 A.2d 1212, 1213 (Pa. 1986). Where more than one person has equal access, the Commonwealth must present evidence showing *either defendant's participation in the drug-related activity, or evidence connecting defendant to the specific room or area where the contraband was kept*. **Commonwealth v. Bricker**, 882 A.2d 1008 (Pa. Super. 2005). Our review of the record indicates that the Commonwealth presented neither.

The Commonwealth presented no evidence that Williams engaged in a drug transaction with the CI, and no evidence that Williams ever interacted with Simons or the CI at any time during the surveillance or execution of the search warrant. N.T. Trial, *supra* at 28. Further, Officer Cuffie acknowledged that no drugs or money were found in Williams' possession at the time of arrest. **Id.** at 36.

As noted above, Officer Cuffie testified that at the time of the search "there could have been someone else in the room [with Williams]. There w[ere] other people in the house." N.T. Trial, *supra* at 31. Officer Cuffie

stated there were a couple of women in the house. *Id.* at 32. Williams did not reside in that house with Simons. The only thing connecting Williams to the room where the drugs and money were found was his identification, which, on cross-examination, Officer Cuffie acknowledged might not have been with the money found in the room, but may have been somewhere "in the room." *Id.* at 36. Further, the parties stipulated that there was no paperwork indicating that Williams was associated with the address under surveillance. *Id*. at 27. Finally, Officer Cuffie acknowledged that paraphernalia was found in the same room where Williams was arrested, supporting the inference that Williams was a user, and not a seller. *Id.* at 37. In light of the fact there were two other individuals present with equal access, and the inconclusive evidence presented by the Commonwealth, we conclude that the inference of constructive possession is not appropriate here.

We are satisfied that the court did not engage in a reevaluation of the evidence or a redetermination of credibility. *Bigelow*, *supra*. In fact, at the hearing on post-sentence motions, the trial court stated the following on the record: "I thought I heard something that I didn't hear. When I read the [notes of testimony], I realized that I thought there was something else that was said and it wasn't, so I apologize to both of you." N.T. Hearing on Post-Sentence Motion, 11/29/16, at 6-7.

In conclusion, we find that the record, viewed in the light most favorable to the Commonwealth, reveals that the Commonwealth failed to establish beyond a reasonable doubt that Williams possessed controlled substances with

the intent to deliver or that he conspired with Simons to do so. The "web of circumstantial evidence" is simply too fragmented to support the convictions. *Marquez*, *supra* at 150. We conclude, therefore, that there was simply insufficient evidence to establish that Williams was guilty beyond a reasonable doubt of PWID and conspiracy. We affirm the trial court's order granting Williams' post-sentence motion in arrest of judgment.

Order affirmed.

Judge Panella joins this Memorandum.

Judge Strassburger files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/18