J-A06037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OMAR JAMAL GILMORE, | : | |
| | : | |
| Appellant | : | No. 581 WDA 2020 |

Appeal from the Judgment of Sentence Entered January 27, 2020
In the Court of Common Pleas of Washington County at
No(s):  CP-63-CR-0000392-2018

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: MARCH 30, 2021**

Appellant, Omar Jamal Gilmore, appeals from the judgment of sentence entered in the Washington County Court of Common Pleas following his waiver trial and convictions for drug offenses.[1]  On appeal, he challenges the sufficiency of the evidence establishing his constructive possession of drugs and contraband.  We affirm.

Our review begins with Alexandria Moltz (Moltz), the lessee of a two-bedroom apartment located at 22 South Main Street, Apartment 2, Houston Borough, Pennsylvania (the apartment).  N.T. Trial, 8/15/19, at 22-23, 33. Beginning in summer of 2017, Appellant "stay[ed]" with Moltz "off and on[,]" for about "six months or less."  **Id.** 26.  Although Appellant was "[j]ust an

---

[1] 35 P.S. § 780-113(a)(16), (30), (32).

acquaintance[,]" the two shared a bedroom. *Id.* at 34. Appellant was "going to be there for a short period of time[,]" and thus kept clothes and personal items at the apartment and "helped around the house[.]" *Id.* at 28-29, 34. He would "invite people over" and stay in the apartment while Moltz worked. *Id.* at 27, 30. When asked if Appellant was a guest, Moltz testified he was "a friend[.]" *Id.* at 34. Appellant was not a party to the apartment lease, did not pay rent, but would, "from time to time[,]" supply Moltz with heroin. *Id.* at 29, 34. Moltz maintained no one else "lived" with her in January of 2018. *Id.* at 24.

On January 12, 2018, at approximately 7:00 a.m., law enforcement executed a search warrant for the apartment. N.T. Trial at 46. At the time of execution, Appellant and Moltz were alone in the apartment, discovered together in one of the two bedrooms. *Id.* at 48. After both were secured, police searched the entire premises. *Id.* at 48, 51. On the nightstand in the occupied bedroom, police found "a brick of heroin," a can containing three "baggies" of marijuana, a "small plastic [b]aggie containing an unknown substance, olive in color," and Appellant's Pennsylvania identification card. *Id.* at 52, 58, 73. The police found, in the same bedroom, a "bundle of heroin[,]" a mason jar containing "baggies" of marijuana, and an "owe sheet[.]" *Id.* at 57-59, 89-91. Sheriff's Deputy Ryan McWreath, a member the Washington County Drug Task Force who assisted in the execution of the warrant, described the owe sheet as "a white sheet of paper with recording of

some numbers, 400, 100, 500, 200, 100, 300, 500, 800 and it's in the name Scott, Ron, Mikey, Chris and then another name, Mikey[.]" *Id.* at 57, 74.

Police also discovered "a burgundy jacket hanging on the door" of the unoccupied bedroom, which had "substantial bricks of heroin" in the left pocket. *Id.* at 62-63, 96. In the living room, police found a box of sandwich bags and two digital scales on the coffee table. *Id.* at 74, 92-93.

On April 30, 2018, Appellant was charged, *inter alia*, with possession with intent to distribute (PWID)-heroin; two counts of possession of a controlled substance-heroin and marijuana; and one count of possession of drug paraphernalia.[2]

The charges proceeded to a one-day waiver trial on August 15, 2019. Moltz: denied knowledge and ownership of the heroin and marijuana; denied selling heroin in January of 2018; stated the burgundy jacket was not hers and she did not know who owned it. N.T. Trial at 27-28, 31-32. The Commonwealth also presented expert testimony concluding the more than "seven bricks [of heroin]" found in the apartment were "a much larger" quantity "than what a person who used these drugs . . . would have in their possession." *Id.* at 113, 115. In addition, the Commonwealth's expert testified the owe sheet and digital scales, "in conjunction with the narcotics found in the same place[,]" indicated "retail sales" of the drugs. *Id.* at 117-

_____

[2] 35 P.S. § 780-113(a)(30), (a)(16), (a)(32), respectively.

18. Appellant did not testify nor present evidence. He was found guilty of the above charges.

On January 27, 2020, the trial court imposed the costs of prosecution and consecutive sentences of: 2 to 4 years' incarceration for PWID-heroin; 3 to 12 months' incarceration for possession of marijuana; and 3 to 12 months' incarceration for possession of drug paraphernalia. Appellant's sentence for possession of heroin merged with his sentence at Count 1 for PWID-heroin. Order, 1/27/20. Appellant's aggregate sentence was 2½ to 6 years' incarceration.

On January 31, 2020, Appellant filed a letter, requesting new counsel for his "direct appeal and any post-sentence motion necessary." Appellant's Letter, 1/31/20, at 1. Appellant claimed his trial counsel was "impossible to work with[,]" did not communicate with him, failed to follow his objectives, and "waived rights . . . that [he] did not wish to be waived." *Id.* The trial court granted Appellant's request and appointed Joseph Horowitz, Esquire, on February 5, 2020.

Almost two months later, on April 2, 2020, the trial court received a second letter from Appellant explaining he filed a *pro se* notice of appeal because he had not heard from Attorney Horowitz. *See* Trial Ct. Op. 7/13/20,

at 5. The trial court treated Appellant's April 2nd, *pro se* notice of appeal as his first petition under the Post Conviction Relief Act (PCRA).[3]

On April 15, 2020, the trial court appointed present counsel, Corrie Woods, Esquire, who filed an amended PCRA petition on May 4, 2020.[4] On May 7th, the trial court granted Appellant's amended PCRA petition and reinstated his direct appeal rights *nunc pro tunc*. Order, 5/7/20. Appellant filed a timely notice of appeal on June 1, 2020.[5] The trial court ordered Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b), which he timely filed on June 14th. The trial court filed a responsive opinion on July 13, 2020.

Appellant presents the following issue for our review:

> Was the evidence presented at trial insufficient to sustain [Appellant's] convictions for possession of various drug-related contraband where police recovered it from areas in another person's apartment to which [Appellant], the other person, and

---

[3] 42 Pa.C.S. §§ 9541-9546.

[4] Appellant's amended PCRA Petition alleged *per se* ineffective assistance of counsel by Attorney Horowitz for failing to fulfill Appellant's wishes to file a notice of appeal. Appellant's Amended Petition for Relief Pursuant to the Post Conviction Relief Act, 5/7/20, at 3-5. Appellant's prayer for relief simply requested the "right to file an appeal from his judgment of sentence *nunc pro tunc*, or, in the alternative, . . . a hearing on his Amended Petition[.]" **Id.** at 6. We note Appellant did not request reinstatement of his right to file a post-sentence motion *nunc pro tunc*.

[5] **See Commonwealth. v. Wright**, 846 A.2d 730, 734 (Pa. Super. 2004) (appellant must file notice of appeal within 30 days of the order reinstating direct appeal rights *nunc pro tunc*).

their guests shared equal access and the Commonwealth failed to present evidence that [Appellant] controlled those areas or was involved in the subject drug-related activity?

Appellant's Brief at 5.[6]

As a preliminary matter, we observe Appellant presents arguments conflating two claims, the sufficiency and weight of the evidence, each with its own standard of review. This Court has emphasized the distinction between a challenge to the sufficiency of the evidence, which contests the **quantity** of evidence presented at trial, and a challenge to the weight of the evidence, which contests the **quality** of that evidence. ***See Commonwealth v. Antidormi***, 84 A.3d 736, 756-57 (Pa. Super. 2014). We have disaggregated Appellant's arguments challenging the sufficiency of the evidence from those challenging the weight of the evidence and address them in turn. We begin our review by addressing Appellant's sufficiency challenges.

Appellant relies on his self-claimed status as an "intermittent houseguest" in support of his challenge to the sufficiency of the evidence. Appellant's Brief at 15. As an "intermittent houseguest[,]" Appellant contends

_____

[6] Given the length and substance of Appellant's brief, we note that his 23 page argument section is not divided into separate sections and does not contain distinctive headings. ***See*** Pa.R.A.P. 2119(a). This Court may quash or dismiss an appeal if the appellant's brief fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure. ***See*** Pa.R.A.P. 2101. Although we disapprove of Appellant's disregard of the Rule, and the resulting lack of clarity in the presentation of his arguments, his failure has not substantially hampered our review, and thus, we address each of his arguments in turn.

he was not in constructive possession of the contraband because he lacked the necessary joint or exclusive control over the premises, *id.* at 14, 22-23, and his presence and proximity to the contraband were insufficient to support his convictions. *Id.* at 23, *citing* **Commonwealth v. Keblitis**, 456 A.2d 149, 151 (Pa. 1983). In addition, Appellant alleges the trial court erred in concluding he was sufficiently "connected" to various areas of the apartment, where Pennsylvania authority "requires control." *Id.* at 30. He insists his relationship with the areas in which contraband was found, and the number of people with equal access to those areas,[7] is "more attenuated" and "far greater" than those in **Commonwealth v. Chenet**, 373 A.2d 1107 (Pa. 1977). *Id.* at 17-19. Appellant also challenges the trial court's crediting Moltz's testimony — that she was unaware of the "heroin in plain view on her nightstand;" Appellant maintains this testimony was "so plainly unreliable as to constitute a legal nullity." *Id.* at 32-33, *citing* **In re J.B.**, 189 A.3d 390, 415 n.25, 26 (Pa. 2018).

Our standard of review is guided by fixed principles:

The standard we apply in reviewing **the sufficiency of the evidence** is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to **find every element of the crime** beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and

---

[7] Appellant avers "Moltz' apartment was accessed by roughly a half-dozen guests per week over the course of six months." Appellant's Brief at 18-19.

circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Antidormi*, 84 A.3d at 756 (citation omitted) (emphases added).

Appellant was convicted of the following drug offenses:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

* * *

(16) Knowingly or intentionally **possessing a controlled**. . . **substance** by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

* * *

(30) [**P**]**ossession with intent to** manufacture or **deliver**, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board[.]

* * *

(32) The use of, or **possession** with intent to use, **drug paraphernalia** for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing,

testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(16), (30), (32) (emphases added).

In the context of a challenge to the sufficiency of the evidence establishing possession, a defendant may actually or constructively possess contraband. **Commonwealth v. Ocasio**, 619 A.2d 352, 354 (Pa. Super. 1993) (citation omitted). Where a defendant does not have physical possession of contraband, constructive possession can be established by showing the defendant had "power of control over and inten[t] to exercise control" over such contraband. **Id.** (citation omitted). This "conscious dominion" may be proven through inference under the totality of the circumstances. **Id.** (citation omitted). However, a defendant's presence, without more, does not establish the requisite conscious dominion where more than one person has "equal access" to the contraband. **Id.** In such cases, "the Commonwealth must introduce evidence demonstrating either appellant's participation in the drug related activity or evidence connecting appellant to the specific room or areas where the drugs were kept." **Id.** at 354-55, *citing* **Commonwealth v. Macolino**, 469 A.2d 132, 135-36 (Pa. 1983).

Here, we have the benefit of the trial court's detailed and thorough opinion. It concluded the Commonwealth had proven Appellant was in constructive possession of "heroin, marijuana, two digital scales, plastic

baggies, and stamp bags." Trial Ct. Op. at 17. The court found Appellant "had joint and exclusive control over the apartment[ ]" and the contraband therein, where "Appellant's actions demonstrated that he was undoubtedly living there," stored personal items in the apartment, remained inside when Moltz was not present, and invited his own personal guests into the unit. *Id.* (record citation omitted). Moreover, notwithstanding Moltz's "equal access" to the contraband, the court found sufficient evidence, aside from Appellant's presence, establishing his "conscious dominion over the contraband." *Id.* Specifically, Appellant was one of only two people found sleeping in a bedroom where his Pennsylvania identification card was located next to heroin and marijuana. *Id.* at 18 (record citation omitted). The court also found Appellant was the owner of the burgundy jacket, hanging/found on the door of the unoccupied bedroom, as Moltz disclaimed ownership and he was the only other person storing clothing in the apartment. *Id.* (record citation omitted). Appellant's ownership of the jacket, the trial court concluded, was sufficient to prove he was connected to the unoccupied bedroom. *Id.* The court also found Appellant was engaged in drug related activity as evidenced by his constructive possession of an "owe sheet" and two digital scales, "which [the Commonwealth's expert] opined are commonly used in the distribution of controlled substances." *Id.* at 18-19.

Appellant argues the evidence in this case "is far weaker than" that in *Ocasio*, 619 A.2d 352. Appellant's Brief at 21. In that case, police executed

a search warrant on a home in Philadelphia, finding five occupants inside the home at the time of execution. *Ocasio*, 619 A.2d at 353. Police discovered substantial amounts of drugs, money, and other paraphernalia throughout the house. *Id.* Ocasio returned home while the search was in progress and was arrested. *Id.* On his person, Ocasio had $422 cash and a current driver's license listing the home as his residence. *Id.* Ocasio was later convicted of possession of drug paraphernalia and appealed, challenging the sufficiency of the evidence establishing his constructive possession of the paraphernalia. *Id.* This Court reversed, reasoning, although Ocasio "was present at the scene of the crime and, as a resident, had access to the drugs in the house[,]" the Commonwealth failed to introduce evidence "demonstrating either [Ocasio's] participation in the drug related activity or evidence connecting [Ocasio] to the specific room or areas where the drugs were kept." *Id.* at 356.

Equipped with the foregoing principles and viewing the evidence in a light most favorable to the Commonwealth, we conclude no relief is due. *See Antidormi*, 84 A.3d at 756. We begin with Appellant's self-claimed status as an "intermittent houseguest." *See* Appellant's Brief at 15. In the context of nonexclusive, constructive possession, liability is not determined solely by a defendant's relationship to real property. *See Ocasio*, 619 A.2d 352. Rather, liability is determined by a defendant's "power of control" and "inten[t] to exercise control" over contraband. *See id.* (insufficient evidence showing defendant was involved in drug related activity); *Commonwealth v.*

*Kitchener*, 506 A.2d 941, 945 (Pa. Super. 1986) (defendant was in joint constructive possession of drugs found in a dwelling, where she and co-defendant were sole residents and drugs were located in places within access and knowledge of both); *Commonwealth v. Keefer*, 487 A.2d 915, 918 (Pa. Super. 1985) (non-lessee defendant, found alone bathing in apartment with clothes in the bedroom, was in joint constructive possession of drugs with apartment lessee); *Commonwealth v. Davis*, 480 A.2d 1035, 1046 (Pa. Super. 1984) (evidence of defendant's attempt to dispose of heroin, joint control over the row house, and possession of large sums of money adequately established his control and intention to control the drugs); *Macolino*, 469 A.2d at 135 (defendant was in constructive possession of cocaine and other paraphernalia found in a closet of the bedroom in which he and wife were sleeping; "[T]he fact that the drugs were found in the bedroom to be of special significance, [where] a bedroom is 'a more private place with limited access and usually subject to the exclusive control of the owner or lessee of the premises.'"). Just as mere presence does not establish the requisite "conscious dominion" where others have equal access to contraband, a defendant's relationship to real property, alone, is no measure of their power, ability, and intent to control contraband. *Ocasio*, 619 A.2d at 354. An occupant's status creates but an "inference" of conscious dominion. *Id.* For those reasons, Appellant's attempt to carve out a categorical "intermittent houseguest" exception to our constructive possession jurisprudence must fail.

Next, we decline to conclude the evidence supporting the trial court's finding, that Appellant "had joint and exclusive control over the apartment," "is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *See* Trial Ct. Op. at 17; *see also Antidormi*, 84 A.3d at 756. It is uncontroverted that Appellant stored personal items in the apartment, remained there when Moltz was not present, and invited his own guests into the unit. *See* N.T. Trial at 29-30. Moreover, Moltz testified Appellant was going to be "staying" in the apartment "for a short period of time." *See id.* at 26, 29. Although Moltz had equal access to the premises, it was sufficient for the court to find Appellant in constructive possession of the contraband based on the "plethora of evidence which established Appellant's participation in drug related activity." *See* Trial Ct. Op. at 18; *see also Ocasio*, 619 A.2d at 354-55.

It therefore follows that Appellant's alternative argument — that the trial court misinterpreted *Ocasio*, 619 A.2d 352, to require mere "connection" to a room, rather than control over its contents — is without merit. *See* Appellant's Brief at 23. Additionally, because we find the evidence sufficient to prove Appellant possessed drugs and contraband, we need not address his "presence and proximity" argument under *Keblitis*, 456 A.2d 149. *See* Appellant's Brief at 17-19.

Moreover, Appellant's reliance on *Chenet*, 373 A.2d 1107, is misplaced. There, a search of Chenet's trailer revealed "a few marijuana seeds on the

- 13 -

kitchen floor, marijuana cigarette butts [and] a 'baggie' containing marijuana residue in the living room[,] and . . . marijuana in a milk delivery box attached to the trailer hitch." *Id.* at 1108. A roommate also lived in the trailer, and he and his girlfriend had equal access to these areas. *Id.* at 1108-09. The Pennsylvania Supreme Court reversed Chenet's conviction of possession of a controlled substance, holding that no reasonable inference could link the marijuana to Chenet, where no marijuana was found in Chenet's room nor on his person. *Id.* at 1109. Unlike Chenet, the evidence produced at Appellant's trial, for the reasons set forth above, **does** provide a reasonable inference linking Appellant to the drugs and contraband. *See Macolino*, 469 A.2d at 136.

Accordingly, we find the instant case analogous to **Macolino**, 469 A.2d 132, where our Supreme Court reiterated, "Possession of an illegal substance need not be exclusive; two or more [people] can possess the same drug at the same time." *Id.* at 136. The Court found the evidence sufficient to establish Macolino, who shared joint and exclusive control of the residence with his wife, was in constructive possession of cocaine and other paraphernalia found in a closet of the bedroom in which they were discovered sleeping. *Id.* Here, the same is true. For the reasons discussed above, the evidence was sufficient to prove Appellant "had joint and exclusive control over the apartment[ ]" and contraband therein. *See* Trial Ct. Op. at 17.

Finally, Moltz's awareness of the "heroin in plain view on [the] nightstand," has no bearing on whether Appellant constructively possessed it. ***See*** Appellant's Brief at 32-33. We remind Appellant, "Possession of an illegal substance need not be exclusive; two or more [people] can possess the same drug at the same time." ***See Macolino***, 469 A.2d at 136.

Next, we turn to Appellant's arguments challenging the weight of the evidence. As discussed above, a challenge to the weight of the evidence contests the **quality** of evidence introduced at trial. ***See Antidormi***, 84 A.3d 736 (Pa. Super. 2014). Appellant begins by asserting the trial court erred in finding Appellant lived at the apartment because Moltz had repeatedly denied Appellant lived there. Appellant's Brief at 25. As such, he argues the trial court's application of ***Macolino***, 469 A.2d 132, to an "intermittent houseguest" was also in error. ***Id.*** at 26-27. Second, he argues the burgundy jacket could not have properly been attributed to him because Moltz never testified Appellant was the only other person to store clothing at her apartment. ***Id.*** at 31. Finally, Appellant alleges Moltz' testimony, that Appellant had supplied her heroin "in the past," does not support the inference that he possessed the heroin seized in the apartment. ***Id.*** at 30.

A challenge to the weight of the evidence must be preserved either in a written or oral motion before sentencing, or in a timely post-sentence motion thereafter. Pa.R.Crim.P. 607(A)(1)-(3); ***Antidormi***, 84 A.3d at 758 n.19, *citing* ***Commonwealth v. Griffin***, 65 A.3d 932, 938 (Pa. Super. 2013).

Failure to preserve a weight challenge results in waiver of the claim. *Griffin*, 65 A.3d at 938. Furthermore, a petitioner who is granted reinstatement of his direct appeal rights *nunc pro tunc*, is not automatically entitled to a subsequent order reinstating his right to file a post-sentence motion *nunc pro tunc*. *Commonwealth v. Fransen*, 986 A.2d 154, 158 (Pa. Super. 2009). If filing a post-sentence motion is necessary to pursue a claim on direct appeal *nunc pro tunc*, a defendant is under an affirmative duty to submit a separate and distinct claim to the PCRA court requesting the right to file a post-sentence motion *nunc pro tunc*. *Id.*

In the instant case, Appellant's challenges to the weight of the evidence are waived. *See* Pa.R.Crim.P. 607(A)(1)-(3); *see also Griffin*, 65 A.3d at 939. To have properly invoked this Court's jurisdiction, Appellant must have requested, and been granted, the right to file a post-sentence motion *nunc pro tunc*. *See Fransen*, 986 A.2d at 158. Then, Appellant would needed to have filed a post-sentence motion *nunc pro tunc* advancing his challenges to the weight of the evidence. *Id.*; *see also Griffin*, 65 A.3d at 939. Our review of the certified record does not reveal the presence of a written or oral motion, nor any post-sentence motion, challenging the weight of the evidence. Furthermore, Appellant's amended PCRA petition does not contain a request to file a post-sentence motion *nunc pro tunc*, and the PCRA court did not grant such relief. *See* Appellant's Amended Petition for Relief Pursuant to the Post Conviction Relief Act, 5/7/20, at 3-5. Accordingly, no relief is due on

Appellant's challenge to the weight of the evidence. We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2021